E-FILED
Thursday, 26 October, 2006 12:26:54 PM
Clerk, U.S. District Court, ILCD

# FILED

OCT 19 2006

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

AMENDED COMPLAINT
ON CASES 06CV3190 AND
06CV3195

DAMONI CLEMON )
Plaintiff K83753 )
)
)
FNU SANDERS VS. W YODER m. JANE FOSTER )
Amy Johnson Davis, James Tusek, m Dick )
S, Sicinski, S. Albert C. Wheeler )
D. Donath, M.L. Johnson T.L. Walters )
John Atteberry wm yoder Paul Williams )
James Tusek, Amy Johnson Davis )
Jeffley Horve    Defendant(s) J. Haly )
Clay Wheeler, Bradley ricek, )
Todd Mc Clusky et, al )

Case No. _____

JUDGE HAROLD BAKER

THIS IS A CIVIL RIGHTS COMPLAINT FOR
MONETARY RELIEF BOTH COMPENSATORY
AND PUNITIVE FROM EACH DEFENDANT
NAMED AS AN INDIVIDUAL AND IN
THEIR OFFICIAL CAPACITIES WHILE
OPERATING UNDER THE COLOR OF STATE LAW
AT ALL TIMES RELATIVE TO THIS CASE
CLAIM AND THEIR VIOLATIONS OF STATE
FELONY LAWS AGAINST ME AT THE
TIMES

COMPLAINT

☑    42 U.S.C. §1983 (suit against state officials for constitutional violations)

☐    28 U.S.C. § 1331 (suit against federal officials for constitutional violations)

☐    Other _____

*Please note: This form has been created for prisoners but can be adapted for use by non-prisoners.*

Now comes the plaintiff, DAMONI CLEMON _____, and states as follows:
(See 2A)

My current address is: WESTERN ILL CORR Center RR4 Box196

M+ STERLing ILL 62353

1st NAME UNKNOWN
The defendant FNU SANDERS _____, is employed as ASS+ CHIEF OF POLICE

Bloomington Police Dept _____ at Bloomington ILL

The defendant W. YODER _____, is employed as STATES ATTORNEY

MCLEAN County _____ at Bloomington ILL

The defendant M. JANE FOSTER _____, is employed as ASS+ STATES ATTORNEY

MCLEAN County _____ at Bloomington ILL

The defendant Amy JOHNSON DAVIS employed as PUBLIC DEFENDER

MCLEAN County _____ at Bloomington ILL

(revised 9/96)

The defendant __JAmes Tusek__ , is employed as __ASSt Public Defender__ __McLean County__ at __Bloomington ILL__

Additional defendants and addresses _____

_See 2B For 30 Additional Defendants_

_See 2A Additional Plaintffs_

For additional plaintiffs or defendants, provide the information in the same format as above on a separate page.

## LITIGATION HISTORY

A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?        Yes   ☐        No   ☑

If yes, please describe _____

_____

B. Have you brought any other lawsuits in state or federal court while incarcerated?   __Not At This Time__

Yes   ☐        No   ☑

C. If your answer to B is yes, how many? _____ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to previous lawsuit:

   Plaintiff(s) _____ None _____

   Defendant(s) _____

   _____

2. Court (if federal court, give name of district; if state court, give name of county)

   _____

3. Docket Number/Judge _____

(4)

2A) ADDITIONAL PLAINTIFFS

NONE

However Plaintiff Clemon IS Requesting Appointment of Counsel For The 4th, 6th, 8th, And Due Process Clause of The 14th Amendment That Defendants As Individuals And In Their Official Capacities Along with Numerous State Felony Tort Violations Defendants Committed Against Plaintiff Clemon Including But Not Limited To: Conspiracy 720 ILCS 5/8-2 By ALL Defendants To Suborn Perjury 720 ILCS 5/32-3, Commit Perjury 720 ILCS 5/32-2, Their use of Threats 720 ILCS 5/15-5, Intimidation 720 ILCS 5/12-6 To Commit official Misconduct 720 ILCS 5/33-3, Obstruction of Justice 720 ILCS 5/31-4, By Promising Favors To Alleged Witnesses, Payment In Exchange For Their Testimony, Violating 720 ILCS 5/32-4c And Violating 720 ILCS 5/32-4(B) Communicating with Witnesses.

Plaintiff Requests This Honorable Court Under Its Supplemental Jurisdiction under 28 U.S.C. 1367 To Prosecute Defendants For Their Violations of ILL Compiled Felony Statutes Spelled out In This Complaint

This Is A Civil Rights Complaint Filed For Monetary Damages, Compensatory And Punitive Along with Injunctive Relief.

All Defendants Acted As Individuals And In Their official Capacities At ALL Times Relevant TO This Complaint And Operated Under The Color of State Law.

(2A)

## ADDITIONAL DEFENDANTS

ALL DEFENDANTS LISTED ARE Bloomington ILL Police OFFICERS, McLEAN COUNTY SHERIFFS, PROSECUTORS, PUBLIC DEFENDERS, TECHNICIANS, Bloomington Police Detectives/Employees: BRADLEY FICEK, M. DICK, S. SICINSKI, S. ALBERT, C. WHEELER, D. DONATH, ML. JOHNSON, T.L. WALTERS, JOHN ATTEBERRY, PAUL WILLIAMS, JEFFREY HORVE, CLAY WHEELER, BRADLEY FICEK, TODD McLUSKEY, RUSSELL THOMAS, RICHARD BARKES, TORY DAUGHERTY, STEPHEN SICINSKI, MICHAEL BURNS, SHAWN ALBERT, CID RECORDS CAROL HOERR, MICHAEL GRAY, KENNETH BAYS, DANIEL HOENIGES, SCOTT MATTHEWSON, JAMES HALL, MATTHEW DICK

At ALL Times RELEVANT TO THIS ACTION ALL DEFENDANTS WERE OPERATING UNDER THE COLOR OF STATE LAW AND ARE SUED AS INDIVIDUALS AND IN THEIR OFFICIAL CAPACITIES FOR MONEY DAMAGES, Both COMPENSATORY AND PUNITIVE, FOR INJUNCTIVE RELIEF AND UNDER ITS SUPPLEMENTAL JURISDICTION OF 28 USC 1367, THIS COURT IS ASKED TO PROSECUTE ALL DEFENDANTS FOR ANY AND ALL STATE TORT LAWS VIOLATIONS THEY HAVE COMMITTED AGAINST PLAINTIFF DAMONI CLEMON LISTED ON PAGE 2A.

AS DEFENDANTS ARE SUED AS INDIVIDUALS AND IN THEIR OFFICIAL CAPACITIES DAMAGES CAN Be SOUGHT FROM THEM AND DO NOT QUALIFY FOR 11TH AMENDMENT IMMUNITY AND BOTH COMPENSATORY AND PUNITIVE DAMAGES CAN Be AWARDED.

PROSECUTORS, POLICE OFFICERS AND OTHER ALLEGED WITNESSES HAVE SUBORNED PERJURY, COMMITTED PERJURY, OBSTRUCTED JUSTICE, CONSPIRED TO COMMIT EACH OF THEM ALONG WITH OFFICIAL MISCONDUCT, AND PROSECUTORIAL MISCONDUCT IN COLUSION WITH THE ALLEGED PUBLIC DEFENDERS. TO GAIN A CONVICTION ARE NOT IMMUNE

QUAL.FED IMMUNITY DOES NOT APPLY TO OFFICIALS SUED IN THEIR OFFICIAL CAPACITIES — (OWEN 445 U.S. 622) MOORE 922 F2 1553, 1556 (1991) McLAUGHLIN 913 F2d 1033, 1039 (1990)

(2B)

4. Basic claim made _____ None _____

5. Disposition (That is, how did the case end. Was the case dismissed? Was it appealed? Is it still pending?) _____

6. Approximate date of filing of lawsuit _____

7. Approximate date of disposition _____

For additional cases, provide the above information in the same format on a separate page.


EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. Is there a grievance procedure available at your institution?   Yes ☑   No ☐

B. Have you filed a grievance concerning the facts relating to this complaint?   Yes ☐   No ☑

If your answer is no, explain why not GRievance Procedure Does Not Apply TO THis CASE - TRiAL Court DismissED mAtteRS - CRiminAL - CASE - Nolle PRos ALL Counts - INSuff. Evidence

C. Is the grievance process completed?   Yes ☑   No ☐

PLEASE NOTE: THE PRISON LITIGATION REFORM ACT BARS ANY INCARCERATED PERSON FROM BRINGING SUIT CONCERNING THE CONDITIONS OF HIS CONFINEMENT UNLESS AND UNTIL HE HAS EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES. PLEASE ATTACH COPIES OF MATERIALS RELATING TO YOUR GRIEVANCE.

# 1st State ment First Portion Claim

## Place of Occurrence:

Bloomington Ill Police Dept, McLean County Criminal Courts, States Attorneys office, Public Defenders office.

Date of Occurrence: March 11, 2005 up to and including 9-27-05 when case 05CF0265 was dismissed, all charges Nol-Pros for Insufficient Evidence.

Witnesses: Damoni Clemon, Phyllis Johnson, officers, detectives Bloomington Police Dept, McLean County Sheriff Department, States Attorney of McLean County Wm Yoder, Jeffrey Horve Asst States Attorney, Amy Johnson Public Defender McLean County and at least 26 police officers and detectives of the Bloomington Police Dept and McLean County Sheriffs Department "Exhibit 1 "I".

The Following 4 pages Accurately describe what Transpired In the 1st portion of This Civil Rights Claim 42 USC 1983 Amended Per Judge Harold A Bakers order of 9-21-06 And Filed By Damoni Clemon and Supported By Exhibits Attached For Support.

# Statement of Claim    FIRST Portion

ON MARCH 11, 2005 I WAS CONTACTED At Home By Phone By PHYLLIS JOHNSON The MOTHER OF OUR CHILD AND WAS ASKED To Come OVER TO HER HOUSE AND TALK ABOUT THE Bloomington Police OFFICERS MICHAEL JOHNSON AND RICHARD BARKES Questioning Her ABOUT my WHEREABOUTS REGARDING THE Homicide of A BARRY Lewis ( EXHIBIT "A" PAGE 184 of 190) VIOLATING Her MIRANDA RIGHTS TO COUNSEL, A 6TH Amendment, 8TH Amendment AND DUE Process VIOLATION OF THE 14TH Amendment.

I Reluctantly went over TO MS JOHNSONS Home To DISCUSS WHAT WAS GOING ON AND SHE ASKED me TO GO WITH Her TO THE Bloomington Police Department. I TOLD HER I couldn't DO THAT Because of A No Contact/Injunction/ Restraining ORDER THAT DEFENDANT STATES Attorney OF MCLEAN County WM YODER  HAD ISSUED AGAINST me To Prevent me From Being WITH Her OR OUR CHILD AT THE SAME Time ( EXHIBIT "B" PAGE 155 of 190). I TOLD HER THAT I'D meet Her AT THE Police Department AND Left Her Residence To Go over TO THE Police Department.

AFTER LEAVING HER Home I GOT IN my CAR AND STARTED TO HEAD over TO THE Bloomington Police Department WHEN I WAS Stopped By ~~Schoenstein and Johnson~~ two Detectives AND ~~Police officers~~ Police officers ABOUT A Block From HER Home AND WAS ARRESTED FOR VIOLATING A No Contact ORDER THAT STATES Attorney WM YODER  HAD Issued AGAINST

First Portion

## Statement of Claim (2)

AGAINST me without the knowledge or consent of Phyllis Johnson. False arrest and a 4th, 6th, 8th, and due process violation of the 14th amendment By officers M. Johnson and Richard Barkes AS Ms. Johnson had never sought nor agreed with anyone on issuing a no contact order against me, prosecutorial misconduct, and a due process violation of the 14th Amend.

Upon arrival at the Bloomington police station I was told by officers M. Johnson and R Barkes that I was being arrested for the homicide of one Barry Lewis and not a violation of an alleged no contact order issued by the states attorney, Defendant Wm. Yoder against me to stop me from seeing or contacting one Phyllis Johnson mother of our child or our child.

All defendants in this action have have violated Illinois complied felony statutes of conspiracy 720 ILCS 5/8-2 To commit false arrest, official misconduct 720 ILCS 720 ILCS 5/33-1, obstruction of justice 720 ILCS 5/31-4 By intimidation 720 ILCS 5/12-6, threats 720 ILCS 5/15-5 and other state law violations which I'm asking this honorable court, under its supplemental jurisdiction 28 USC 1367 To prosecute defendants to the fullest extent of the law.

# Statement of Claim - 3

ALL DEFENDANTS WERE RESPONSIBLE FOR HOLDING PLAINTIFF, AGAINST HIS WILL, AT THE BLOOMINGTON POLICE STATION, DENYING ME ACCESS TO COUNSEL A 6TH AMEND VIOLATION, 8TH AMEND VIOLATION AND A DUE PROCESS VIOLATION OF THE 14TH AMENDMENT.

ALL DEFENDANTS ALSO VIOLATED THE FOLLOWING ILLINOIS STATE STATUTES UNDER ARTICLE 108 - "SEARCH AND SEIZURE" (EXHIBIT "C" - PAGE 158 OF 190) 725 ILCS 108-2 CUSTODY AND DISPOSITION OF THINGS SEIZED, 725 ILCS 725 ILCS 5/108-3; GROUNDS FOR SEARCH WARRANT, 725 ILCS 5/108-4, 5/108-6, 5/108-7, 5/108-10 RETURN TO COURT OF ALL THINGS SEIZED BY OFFICERS INCLUDING A COMPLETE INVENTORY OF ANY AND ALL INSTRUMENTS, ARTICLES OF THINGS SEIZED BY OFFICERS (DEFENDANTS NAMED) AND PROVIDE THE ACCUSED WITH A COPY OF ALL ITEMS SEIZED AND TAKEN FROM HIS HOME BY WARRANT FROM THE COURT AND DEFENDANT STATES ATTORNEY WM YODER AND NAMED DEFENDANTS (EXHIBIT "D") COPY OF STATES WITNESS LIST, POLICE OFFICERS, POLICE DETECTIVES ENTERED PLAINTIFFS HOME LOOKING FOR SOMETHING TO CONNECT HIM TO THE HOMICIDE OF BARRY LEWIS AND FOUND NOTHING TO SUPPORT HIS ARREST FOR A HOMICIDE AND IN THE PROCESS "TRASHED" HIS HOME, DESTROYING OR DAMAGING HIS SIDE DOORS, BACK DOOR AND A LOT THINGS, ITEMS, FROM THE HOUSE WERE DESTROYED/ DAMAGED/OR DISAPPEARED (EXHIBIT "E" PAGE 170 OF 190) A 4TH AND 8TH AMENDMENT VIOLATION.

EXHIBIT "F" PAGE 123 OF 190 SHOWS THIS TO BE AN ILLEGAL/WRONGFUL ARREST ON FALSE CHARGES. A 4TH, 8TH AND DUE PROCESS CLAUSE VIOLATION OF THE 14TH AMENDMENT.

FIRST PORTION

## Statement of Claim - 4

The State Claimed To Have Information To Hold Me And Forced Me To Post Bail On A Case That They Had Little Or No Evidence On And Would In Fact Be Dismissed In A Year And All Charges Nole Prosed By The Honorable Judge Ronald Dozier For Insufficient Evidence (Exhib "G")

The States Attorney Of McLean County Wm Yoder  By His Assistant Jeffrey Horve Conspired With The Bloomington Police Department Officers And Detectives (Defendants) Named In Exhibit "D", With McLean County Public Defender Amy Johnson Davis By Their Assistant Public Defender James Tusek In Turning A Blind Eye To The Truth, Exercised Reckless And Deliberate Indifference To The Lack Of Evidence They Had, The Prosecutorial Misconduct Shown By The States Attorney, His Assistant, And Other Defendants Named By Their Continual And Ongoing Prosecution Of Plaintiff Clemon Supported By Subornation Of Perjury, Perjury, Official Misconduct, Obstruction Of Justice, And Ineffective Assistance Of Counsel By The McLean County Public Defender And Their Assistant Defender.

The Aforementioned Issues And Supporting Exhibits Attached Supports My Claim Under The Civil Rights Claim 42 U.S.C 1983 Against All Defendants As Individuals And In Their Official Capacities While Operating Under The Color Of State Law, For Money Damages And Injunctive Relief

Plaintiff Requests Counsel Be Appointed By This Honorable Court And Jury Trial Scheduled

Damoni Clemon

# EXHIBIT LIST FIRST PORTION OF CLAIM

**"A"** PAGE 184 of 190 TRANSCRIPTS of CASE #05CF0265 STATE of ILLINOIS VS DAMONI CLEMON

**"B"** PAGE 155 of 190 TRANSCRIPTS of CASE #05CF0265 STATE of ILLINOIS VS DAMONI CLEMON

**"C"** PAGE 158 of 190 TRANSCRIPT of CASE #05CF0265 STATE of ILLINOIS VS DAMONI CLEMON

**"D"** STATES WITNESS LIST / DEFENDANTS IN THIS CASE — FROM STATE VS DAMONI CLEMON #05CF0265

**"E"** PAGE 170 of 190 TRANSCRIPT of CASE #05CF0265 STATE of ILLINOIS VS DAMONI CLEMON AND

**"F"** PAGE 123 of 190 TRANSCRIPT of CASE #05CF0265 STATE of ILLINOIS VS DAMONI CLEMON

**"G"** JUDGE RONALD DOZIERS ORDER TO DISMISS #05CF0265 — NOl — PROS ALL COUNTS INSUFFICIENT EVIDENCE

**"H"** GRAND JURY PROCEEDINGS CASE 05CF0265 UNLAWFUL USE OF WEAPON

**"I"** Bloomington Police Incident Report showing ALL OFFICERS INVOLVED 6 PAGES CASE 05CF0265

**"J"** APPEARANCE BOND — No Homicide mentioned

**"K"** RECORD SHEET — No Homicide mentioned

Incident Narrative 79  03/21/2005 11:22

Supplemental Reporting DETECTIVE MATTHEW DICK - BPD, ID # 6687

On Monday 3-7-05, the body of Barry Lewis was discovered in the trunk of a recovered stolen vehicle. Results of an autopsy revealed that Lewis' death was likely a homicide.

On Friday 3-11-05, Damoni Clemon was arrested for Violation of Bail Bond and transported to the Bloomington Police Department. Clemon had been driving his white 1990 Cadillac at the time of his arrest. Brown's wrecker was called to tow the vehicle. Detective Wheeler and I (Detective Dick) assisted by conducting an inventory search of the vehicle. Several items were observed in the vehicle that were similar to a general description of the property missing from the stolen vehicle that Lewis' body was discovered in. While conducting the inventory, I took several digital photographs of these items. These photographs were later shown to Niki Swanson whose live-in boyfriend, Don Nelson, owned the car. Swanson was unable to identify any of the property pictured.

The pictures shown to Swanson were later placed into standard evidence locker number eight at the Bloomington Police Department.

This case remains PENDING.

Incident Narrative 54  03/07/2005 13:00

Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD, ID # 5837

On Friday, 03/11/2005, at approximately 1000 hours, Detective R. Barkes and I made contact with Phyllis Johnson at her residence, 618 South McClun Street Apartment 6, Bloomington, Illinois. Detective Barkes and I were making contact with Phyllis in reference to a lead provided by Damoni Clemon in reference to this incident.

Phyllis agreed to meet with Detective Barkes and I at BPD between 1030 hours and 1040 hours. Phyllis said she couldn't understand why Damoni would be saying anything about her. Phyllis said she is doing the necessary things to provide for her and her children. Phyllis said she makes an effort to stay away from Damoni so she could move forward with her life. Phyllis said each time she has a contact with Damoni, she documents the contacts by way of a BPD report.

Detective Barkes and I returned to BPD to prepare for Phyllis' arrival. Upon our arrival at BPD, I was informed Damoni Clemon called BPD wanting to speak with me. I was told Damoni called to report that he was tired of him and his wife being harassed by the police. Damoni did not leave a return number, but I expected him to come to BPD fairly soon. I suspected Phyllis might have called Damoni due to our (Detective Barkes' and I) visit.

I began checking the EJS system to review prior domestic incidents involving Damoni Clemon and Phyllis Johnson. I observed numerous domestic incidents between Damoni and Phyllis.

The following incident caught my attention: BPD EJS report 2004-15758. On Saturday, 11/13/2004, Damoni was arrested for battering Phyllis Johnson. Kausoundra Clemon was also listed as a victim on the report (2004-15758). Damoni was charged with Domestic Battery - Subsequent Offense - Felony. Damoni posted bond on the Domestic Battery charge on Monday, 11/15/2004.

A provision of Damoni's bail bond is that he IS NOT allowed to have any contact with Phyllis Johnson or Kausoundra Clemon. See McLean County States Attorney's Office case number 2004-CF-001052 for additional information in reference to conditions of Damoni's bail bond. Further, Damoni's next court date in reference to McLean County States Attorney's Office case number 2004-001052 is Thursday, 04/21/2005.

BPD Vice Officer J. Atteberry observed Damoni Clemon travel to Phyllis' residence, 618 South McClun Street, Apartment 6. Damoni was operating his white, 1990, Cadillac Brougham, bearing Illinois temporary registration, "428E503". Damoni was observed having contact with Phyllis and Kausoundra, which is clearly a VIOLATION of his BAIL BOND - NO CONTACT provision.

At 1130 hours, BPD Vice Detectives M. Gray and T. McCoy effected a traffic stop on Damoni Clemon in the area of westbound Oakland Avenue and Clinton Street. Damoni was placed under arrest for Violation of Bail Bond - No Contact Provision. Damoni was transported to BPD for questioning in reference to BPD EJS report 2005-3155.

Later, Damoni was transported to the McLean County Jail for booking and processing in reference to this incident as well as the following BPD EJS reports, 2005-3155, 2005-2635 and 2005-888.

At approximately 1150 hours, I entered interview room #6 to conduct an audio/DVD recorded interview with Phyllis Tashan Johnson. I informed Phyllis our interview would be audio/DVD recorded. In the interest of brevity and clarity the following is a paraphrase and summary of the interview with Phyllis Johnson. The order of items discussed may vary from the order of the original interview. The words used may or may not be the actual words used by Phyllis and I during the interview. For a more detailed account of the interview the DVD recording should be reviewed.

Phyllis said she has been with Damoni since he was ten (10) years old and she was eleven (11) years old. Phyllis said she has six (6) children with Damoni Clemon, but said they have been apart due to his other women. Phyllis said Damoni currently has and frequently has had a variety of women: Hope Ann Lovins, Christina Winters, Nakeisha Campbell, Monica Poole and Erica Redmond. Phyllis said many of these women have caused her problems. Phyllis said Monica Poole has been calling her phone bothering her as well as calling the Department of Children and Family Services (D.C.F.S.) To complain on her.

Phyllis said Damoni's mother, has temporary custody of her other children. Phyllis said she was sentenced to the Department of Corrections for two (2) years due to a drug case. Phyllis said Damoni is not allowed to be around her (Phyllis) or Kasoundra due to his PENDING gun case. Phyllis said D.C.F.S has a pending case due to Monica's false accusations.

Phyllis told me of a recent incident when Damoni asked to take her work. Phyllis said she parked her truck (blue Ford Explorer) at his Damoni's) mother's residence. Phyllis said instead of turning onto North Main Street, he drove to 306 South Gridley Street. Phyllis said

Incident Narrative 57 03/07/2005 13:00

Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD, ID # 5837

On Friday, 03/11/2005, at approximately 1346 hours, Detective R. Barkes and I entered interview room #2 to conduct an audio/DVD recorded interview with Tommy Slayton. Detective Barkes informed Tommy our interview would be audio/DVD recorded. Detective Barkes then read Tommy the Miranda Warnings and waiver questions. Tommy said he understood the Miranda Warnings, waiver questions and agreed to speak with us about this incident.

In the interest of brevity and clarity the following is a paraphrase and summary of the interview with Tommy Slayton. The order of items discussed may vary from the order of the original interview. The words used in this report may or may not be the actual words spoken by Detective Barkes, Tommy and I during the interview. For a more detailed account of the interview the DVD recording and Detective Barkes' supplemental report should be reviewed.

Based on information received from Tommy Slayton during the interview, I suspected a possible location of interest to be 710 West Washington Street. Tommy said he found Barry "Boo" Lewis lying naked in back of this residence.

Detectives B. Ficek and T. McClusky went to 710 West Washington Street based on the information provided by Tommy. Detectives Ficek and McClusky were trying to recover possible evidence of this crime at this location. Detectives Ficek and McClusky reported they observed four (4) plastic garbage cans on the east side of the residence. Detectives Ficek and McClusky reported the cans did not have lids placed on top of them. Detectives Ficek and McClusky found a clear plastic garbage bag inside of one (1) of the plastic garbage cans. The clear plastic bag, which contained clothing, was removed from the plastic garbage can and placed onto the ground.

At around 1810 hours, Lieutenant T. Stanesa (separate vehicle), Sergeant P. Williams, Detective Barkes, Assistant States Attorney, K. Campbell and I went to 710 West Washington Street. Upon our arrival, I observed the following subjects on scene: Detectives Ficek and McClusky and Officers S. Albert and I. Thornton. I observed a clear plastic bag, which contained clothing, sitting on the ground, just east of the residence.

Shortly thereafter, Assistant States Attorney Campbell and I returned to her office to draft a search warrant for 710 West Washington Street. While en route to the McLean County States Attorney's Office, Detective J. Atteberry informed Campbell that he would need a search warrant also. Detective Atteberry served a search warrant on Damoni Clemon's residence, 1202 West Olive Street this afternoon. While serving their search warrant, Detective Atteberry observed a multicolored quilt or blanket and a spare tire on the back seat of a white, 1986, Cadillac Brougham, bearing Illinois registration, "751 5733". The white Cadillac was parked in front of 1202 West Olive Street.

Assistant States Attorney Campbell telephoned Assistant States Attorney J. Patton and requested her (Patton's) assistance. Later, Assistant States Attorney Patton arrived at the McLean County Courthouse to draft a search warrant for Detective Atteberry.

Upon completing the search warrant, Assistant States Attorney's Campbell and Patton, Detective Atteberry and I met with the honorable Judge Rebecca Foley. Judge Foley read the two (2) affidavits (separately) for the search warrants and then had me testify under oath as to the accuracy of the affidavits. Judge Foley signed one (1) search warrant at approximately 2005 hours and the second (2nd) search warrant at approximately 2010 hours. After obtaining the search warrants, Assistant States Attorney's, Campbell and Patton, Detective Atteberry and I returned to the McLean County Courthouse.

The search warrants were later executed at 710 West Washington Street and on the white, 1986, Cadillac Brougham, bearing Illinois registration, "751 5733".

See Detective R. Thomas' supplemental report (#62) for a specific detailed list of the items seized and where said items were located.

This investigation is PENDING.

EX H,B,+ "D"

JT

STATE OF ILLINOIS
COUNTY OF MC LEAN

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT

THE PEOPLE OF THE
STATE OF ILLINOIS

vs.

No. 05-CF-0265

DAMONI CLEMON
DEFENDANT.

## DISCOVERY COMPLIANCE PURSUANT TO RULE 412

Now comes the People of the State of Illinois by Jeffrey Horve, Assistant State's Attorney, in and for the County of McLean, State of Illinois, and presents as Discovery Compliance herein the following:

1. Pursuant to Supreme Court Rule 401(a)(1), the State may call the following as witnesses:

Detective Michael Johnson
Sergeant Paul Williams ✓
Officer Russell Thomas
Detective Richard Barkes
Detective Tory Daugherty
Detective Todd Mcclusky ✓
Detective Stephen Sicinski
Detective Michael Burns
Detective Clay Wheeler ✓
Detective Bradley Ficek ✓
Detective Matthew Dick ✓
Lieutenant Timothy Stanesa
Sergeant Gregory Scott
Officer Ivy Thornton
Detective Timothy McCoy
Officer William Lynn
Officer Amy Keil
Lieutenant Peter Avery
Detective Tommy Walters
Officer Shawn Albert
CID Records Carol Hoerr
Detective John Atteberry ✓
Detective Michael Gray
Detective Kenneth Bays
Sergeant Daniel Hoeniges
Officer Scott Mathewson
Officer James Hall



RECEIVED

MAY 4 2005

McLEAN COUNTY
PUBLIC DEFENDER

Incident Narrative 66 03/17/2005 14:17

Supplemental Reporting DETECTIVE CLAY WHEELER - BPD, ID # 4496

On Friday, 03/11/05, a search warrant was served at 1202 W. Olive Street, Bloomington, Illinois. At approximately 1500 hours, members of the Bloomington Police Department Emergency Response (ERU) Team, Vice/Narcotics Unit, and Criminal Investigation Division executed the search warrant.

I assisted by searching an upstairs room at the top of the stairs that appeared to used in part as a bedroom. In this room I searched through a box that contained parts of a shop vac. Also in the box was an electronic scale. This was maintained at this location until collected by Detective McCoy as evidence.

McCoy's supp.#53 Exhibit # V23 Sunbeam Model SP5 / Center upper room.

I also located various letters and paperwork that was collected from a storage room against the south wall. Included with this was a book on growing cannabis. Again, these were maintained at this location until collected by Detective McCoy as evidence.

McCoy's supp.#53 Exhibit # V24 Letter/ Upper South Room.
McCoy's supp.#53 Exhibit # V25 Miscellaneous papers with numbers/ Upper South Room.
McCoy's supp.#53 Exhibit # V26 Book on growing cannabis/ Upper South Room.

I had also gathered information from Detective Johnson's supplemental reports about the property that had been in the stolen car. I shared this information with other Detectives that were searching and tried to help them determine if items they had questions about needed to be taken as evidence. Some clothing, tools, and comforters were collected. It should be noted that I was present when Niki Swanson was shown some pictures of items seen in Damoni Clemon's car. She did not identify any of the items. She did tell us the blanket that was described in the report as a quilt was actually a comforter. She was not sure of the color because she could not remember for sure which one was in the car, but it was a comforter, she would not have described it as a quilt.

While in the back yard I stepped up to the doorway of the garage. I could see a baseball to the extreme left, a blue funnel near the doorway, a long yellow funnel against the east wall, and a red floor jack near a huge pile of car parts in the center of the garage. I called Sgt. Williams and asked if the garage was part of the search warrant, since it was an unattached garage. He advised it was not listed on the warrant. I then took pictures of the items from just outside the doorway. I later discovered the picture I attempted to take of the baseball did not come out.

I also noticed some items around the garage at 1202 W. Olive Street. There was a blanket in a pickup truck, an umbrella hanging from an outside mirror on the drivers side of the same pickup truck. There were also some car batteries near the garage. I photographed these items.

Prior to leaving 1202 W. Olive I observed a set of car tracks leading into the yard on the east side of the house. The east side of the house has a patio door that opens onto a large deck. From the layout of the house it appeared likely the patio door was the main entry and exit to the house. The car tracks crossed the curb and sidewalk and seemed to stop where the back end of the car would be next to the deck. I thought from looking at the tracks it was possible someone had pulled a car into the yard next to the deck to load or unload something. I advised Sgt. Williams of this and suggested we may want the tracks processed by crime scene technicians.

It should be noted Detective Bays and Detective Atteberry reported to me they had observed a spare tire and some type of blanket in a white Cadillac parked in front of 1202 W. Olive. The car was registered in Monica Poole's name. Officer Heinlen conducted a free air search around the car with his K-9 partner. Officer Heinlen told us the dog indicated on the car. It was at this time I was tasked to another detail and left 1202 W. Olive.

On Friday, 03/11/2005, I received a fax from John Dierker documenting the above information.

On Thursday, 03/10/2005, it was determined that I would attempt to obtain a search warrant for Damoni Clemon's residence at 1202 W. Olive Street Bloomington, Illinois. The probable cause for the search warrant was based upon information received at different times during the course of this investigation. The probable cause used in the search warrant was information Damoni Clemon stated to Officer VanHoveln on Wednesday, March 09, 2005 and evidence obtained by doing a "trash rip" at 1202 W. Olive Street on Thursday, March 10, 2005. For additional information review the Complaint for Search Warrant for 1202 W. Olive Street Bloomington, Illinois 61701.

On Friday, 03/11/2005, Damoni Clemon was arrested at 618 S. McClun Street. Damoni Clemon's was arrested for violating a no contact order in reference to Phyllis Johnson. Review Detective Michael Johnson's supplemental report for additional information regarding Damoni's arrest and the no contact order.

Damoni was arrested and transported to the Bloomington Police Department and placed in interview room #4 which is located within the Criminal Investigation Division. While in the interview room I introduced myself to Damoni Clemon. I explained to Damoni that our interview was being recorded both audio and visually on DVD. Damoni gave his consent allowing the interview to be recorded. Since Damoni was under arrest, I read to Damoni Clemon his Miranda rights from a small white Miranda card that I carry on my person. I read to Damoni both waiver questions that are located on the reverse side of my Miranda card. Damoni answered yes to both waiver questions indicating his willingness to discuss this incident with me. Miranda was read to Damoni at 1155 hours on 03/11/2005. Present during the interview were Damoni K. Clemon (black-male, DOB 12/30/1074) and I. I offered numerous times to take the handcuffs off Damoni Clemon. He requested that I leave the handcuffs on him. Damoni also refused to sit down during the interview.

The following is a synopsis of Damoni Clemon's DVD recorded statement:

Damoni said Boo was like family to him. Damoni made the statement numerous times that he was "tie tongue talkin." I have no idea what this meant. Damoni continued talking with me. Damoni said Boo would help clean people's houses and take care of their yards.

Damoni began talking about his dealings with Shauntez Winters. As the interview continued Damoni was transferred from interview room #4 to interview room #1. The transfer was requested by Sgt. Williams because he thought there was a problem with the microphone in interview room #4. Once Damoni Clemon was in interview room #1, I continued the interview. During the majority of Damoni's interview he would go off on tangents that had no bearing on this incident.

Damoni would see Boo at least every other day. The last time Damoni saw Boo was on a day when Phyllis Johnson told Damoni that she needed help moving. Damoni ran into Boo and told him he needed help moving Phyllis. Damoni and Boo went to Phyllis' apartment to help her move and she told them that she was did not have a truck to move her things. Therefore, Phyllis was unable to move at that time. Damoni could not remember the date this took place. Damoni said that Boo ended up doing some work in his yard on Gridley Street and then he left. Damoni said he had no idea where Boo went after he left his property.

Damoni said he knew that Boo was a smoker, meaning crack cocaine. Damoni said Boo did not owe anyone any money. When I asked Damoni what he thought happened to Boo, Damoni began talking about having 7 days to get a job. Damoni was upset that the newspaper mentioned the possibility of Boo being homosexual and that Boo's family had no comment. Damoni said he talked to Larry Lewis, Boo's brother, on Thursday, March 10, 2005.

Sgt. Paul Williams knocked on the interview room door requesting to speak with me. Once I exited the interview room, Sgt. Williams stated that Tommy Slayton Jr. was in custody and that he wanted Detective Michael Johnson and I to interview him. At this point I concluded my interview with Damoni Clemon. For additional information review Damoni's DVD recorded statement.

On Friday, 03/11/2005, Tommy Slayton Jr. was located at Taylor and Lee Streets by Detective Atteberry and Detective McClusky and subsequently transported to the Bloomington Police Department. Once at the police department, Tommy Slayton was placed into interview room #2 which is located within the Criminal Investigation Division.

While in the interview room I introduced Detective Michael Johnson and myself to Tommy Slayton. I explained to Tommy that our interview was being recorded both audio and visually on DVD. Tommy gave his consent allowing the interview to be recorded. I read to Tommy Slayton his Miranda rights from a small white Miranda card that I carry on my person. I read to Tommy both waiver questions that are located on the reverse side of my Miranda card. Tommy answered yes to both waiver questions indicating his willingness to discuss this incident with me. Miranda was read to Tommy at 1352 hours on 03/11/2005. Present during the interview were Tommy Lee Slayton Jr., (black-male, DOB 7/29/1967), Detective Michael Johnson and I.

Before Detective Johnson and I began to interview Tommy in reference to his knowledge of Barry "Boo" Lewis, I read to Tommy a Photo

EXHIBIT
"G"

| STATE OF ILLINOIS | ) | IN THE CIRCUIT COURT OF THE |
| COUNTY OF MC LEAN | ) | ELEVENTH JUDICIAL CIRCUIT |

THE PEOPLE OF THE STATE OF ILLINOIS   )

VS.                                   )      NO. _05-CF-0265_

Damoni Lemon                          )

## MOTION TO DISMISS

Now comes the People of the State of Illinois by the State's Attorney of McLean County, and moves this Court to:

☒ nol-pros (all) Counts _____ of the above-entitled cause
☐ dismiss the Rule to Show Cause
☐ dismiss the Petition to Revoke

for the following reason(s): _Insufficient evidence_

_____

_____

_09/27/05_ _____        _____
Date                          (Assistant) State's Attorney

## ORDER

This cause, coming on to be heard on the foregoing motion, and the Court being fully advised in the premises:
IT IS, THEREFORE, ORDERED that (all) Counts _____

☒ of the above-entitled cause be and the same is/are hereby nol-prossed.
☐ the Rule to Show Cause is hereby dismissed.
☐ the Petition to Revoke is hereby dismissed.

☐ Defendant is ordered to pay costs from bond.

☐ There is a warrant outstanding for Defendant's arrest on this charge. Said warrant is hereby recalled.

☐ Defendant is in custody of the McLean County Sheriff's Department on this charge. If Defendant is not being held on any other charges or detainers, said Department is hereby ordered to release Defendant from custody.

☐ Defendant's bond is ordered released, after it is applied to fine and costs in this cause, in accordance with applicable statutes.

☐ Defendant's bond is ordered transferred to case number _____ as well as all SOS supporting documents including Notice of SSS and officer's sworn report.

_9/27/5_ _____        _____
Date                       Judge

white:      Court Copy
yellow:     State's Attorney
pink:       Defendant
goldenrod:  Defense Attorney

Exhibit "H"

COUNTY OF  MC LEAN

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT

STATE OF ILLINOIS


GRAND JURY PROCEEDINGS

March 23, 2005


Regarding <u>DAMONI CLEMON,</u>

        Unlawful Use of Weapon by a Felon,
        Unlawful Possesion of a Controlled
        Substance, Permitting Unlawful
        Use of Building


Witness:

<u>MIKE</u> <u>GRAY</u>

Examination by Mr. Horve........ 2



Mr. Jeff Horve, Assistant State's Attorney
on behalf of the People



Laura J. Ruff
Court Reporter
679 E. 900 North Road
Gridley, IL 61744

1

(191)

(Whereupon the Assistant State's Attorney
informed the Grand Jury of its rights pursuant to
Illinois Revised Statutes.)


### MIKE GRAY

having been first duly sworn, was examined upon
oral interrogatories and testified as follows:

EXAMINATION BY MR. HORVE:

Q    Name?

A    Mike Gray.

Q    Occupation Sir?

A    I'm a Detective with the Bloomington Police
Department.

Q    Are you familiar with a March 11th of
'05 search warrant that was executed at 1202 West
Olive?

A    Yes.

2

Q  Who resided there at the time?

A  Damoni Clemon.

Q  In fact  was he present when this warrant was served?

A  No he was not.

Q  Was he located in the area and arrested?

A  Yes.

Q  Now inside the  residence, did they find paraphernalia and equipment for cooking  crack cocaine?

A  Yes.

Q  Generally  explain what kind of things you're talking about.

A  In the  basement of his residence we found like an electric stove, a portable  electric stove. You plug it into the wall. Had two burners  on it.

Q  In fact there was also residue and items that fieldtested  positive for the presence  of cocaine?

A  Yes.  Next to the scale there were three different skillets all with copper mesh which is  used as a filter in smoking cocaine, and a lot of cocaine residue on the skillets themselves.

3

Exhibit "H"

Q  After being located and interviewed, did Mr. Clemons admit that there had been    cooking cocaine going on in the residence  and he knew about it?

A    Yes he did.

Q  Likewise, during the search did they find a 12 gauge shotgun in the basement where the cocaine  was being cooked?

A  Yes.

Q  In fact Mr. Clemons  does have a prior felony  conviction?

A  Yes he does.

Q  That's in McLean County cause  number  97 CF 732?

A  Yes.

Q  In addition  to being  his residence,  did another individual  that was involved in this  indicate or admit that Mr.  Clemon had been in possession of the weapon?

A    I don't know that he admitted that he had ever seen him in possession of it, no.

BY MR. HORVE: Okay.

(Witness excused.)

(Thereupon the Grand Jury deliberated.)

4

COUNTY OF MC LEAN

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT

STATE OF ILLINOIS


I, Laura J. Ruff,  Court Reporter, do hereby certify that I  reported in shorthand the above and foregoing  testimony taken and proceedings had before the Grand  Jury on March 23, 2005; that I thereafter caused the foregoing to be transcribed into typewriting, which I hereby certify to be a true and accurate transcript of said proceedings.

Dated this ____ day of  April, 2005.


_____
Laura J. Ruff
Court Reporter

Date: 03/30/2005 08:09          E x H i B i t  I "          Page: 1    of  190

| | |
|---|---|
| Report #:    200503155 | Bloomington PD |
| Report Date: 03/07/2005    13:00 | Start Date:  03/07/2005    13:00 |
| | End Date: |
| Summary:    DEATH INVESTIGATION. | Status: 02 - Pending |
| Report Type: | |

200503155

## Incident Location

Address:  305 S EAST STR

Intersection:                                          Distance:              F

BLOOMINGTON, IL  61701-                                Beat: 1      Sub Beat:

## Incident Offenses

| #1 | Original Report | 6046 | INVESTIGATE DEAD BODY |
|---|---|---|---|
| **Remarks:** | | | |
| #2 | Supp. #54 | 0810 | THEFT OVER $300 |
| **Remarks:** | | | |
| #3 | Supp. #54 | 0160 | CONCEALING HOMICIDAL DEATH |
| **Remarks:** | | | |
| #4 | Supp. #54 | 0110 | FIRST DEGREE MURDER |
| **Remarks:** | | | |
| #5 | Supp. #54 | 1410 | UNLAWFUL USE OF WEAPON |
| **Remarks:** | | | |

## Officers Involved

Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Original Report

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Original Report

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #2

Supplemental Reporting OFFICER RUSSELL THOMAS - BPD - 2267 - Supp. #2

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #3

Supplemental Reporting DETECTIVE RICHARD BARKES - BPD - 2268 - Supp. #3

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #4

Supplemental Reporting DETECTIVE TORY DAUGHERTY - BPD - 4517 - Supp. #4

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #5

Supplemental Reporting DETECTIVE TODD MCCLUSKY - BPD - 7198 - Supp. #5

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #6

Supplemental Reporting DETECTIVE STEPHEN SICINSKI - BPD - 6606 - Supp. #6

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #7

Supplemental Reporting DETECTIVE TODD MCCLUSKY - BPD - 7198 - Supp. #7

Supplemental Reporting DETECTIVE MICHAEL BURNS - BPD - 4849 - Supp. #8

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #8

Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #9

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #9

Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #10

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #10

Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #11

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #11

Supplemental Reporting DETECTIVE MICHAEL BURNS - BPD - 4849 - Supp. #12

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #12

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #13

Supplemental Reporting DETECTIVE TORY DAUGHERTY - BPD - 4517 - Supp. #13

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #14

Supplemental Reporting OFFICER RUSSELL THOMAS - BPD - 2267 - Supp. #14

Supplemental Reporting DETECTIVE BRADLEY FICEK - BPD - 5559 - Supp. #15

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #15

Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #16

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #16

Supplemental Reporting DETECTIVE BRADLEY FICEK - BPD - 5559 - Supp. #17

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #17

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #18

Supplemental Reporting DETECTIVE TORY DAUGHERTY - BPD - 4517 - Supp. #18

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #19

Supplemental Reporting DETECTIVE TORY DAUGHERTY - BPD - 4517 - Supp. #19

Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #20

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #20

Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #21

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #21

Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #22

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #22

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #23

Supplemental Reporting DETECTIVE MATTHEW DICK - BPD - 6687 - Supp. #23

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #24

Supplemental Reporting DETECTIVE TORY DAUGHERTY - BPD - 4517 - Supp. #24

Date: 03/30/2005 08:09          ExHiBiT "I"          Page: 3    of 190

| |
|---|
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #25 |
| Supplemental Reporting DETECTIVE MATTHEW DICK - BPD - 6687 - Supp. #25 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #26 |
| Supplemental Reporting DETECTIVE MATTHEW DICK - BPD - 6687 - Supp. #26 |
| Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #27 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #27 |
| Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #28 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #28 |
| Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #29 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #29 |
| Supplemental Reporting DETECTIVE RICHARD BARKES - BPD - 2268 - Supp. #30 |
| Approving LIEUTENANT TIMOTHY STANESA - BPD - 4729 - Supp. #30 |
| Supplemental Reporting DETECTIVE BRADLEY FICEK - BPD - 5559 - Supp. #31 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #31 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #32 |
| Supplemental Reporting DETECTIVE TORY DAUGHERTY - BPD - 4517 - Supp. #32 |
| Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #33 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #33 |
| Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #34 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #34 |
| Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #35 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #35 |
| Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #36 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #36 |
| Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #37 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #37 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #38 |
| Supplemental Reporting DETECTIVE TODD MCCLUSKY - BPD - 7198 - Supp. #38 |
| Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #39 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #39 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #40 |
| Supplemental Reporting DETECTIVE MATTHEW DICK - BPD - 6687 - Supp. #40 |
| Supplemental Reporting DETECTIVE MICHAEL BURNS - BPD - 4849 - Supp. #41 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #41 |

EXHIBIT "I"

Supplemental Reporting DETECTIVE BRADLEY FICEK - BPD - 5559 - Supp. #42

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #42

Supplemental Reporting DETECTIVE MICHAEL BURNS - BPD - 4849 - Supp. #43

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #43

Supplemental Reporting DETECTIVE BRADLEY FICEK - BPD - 5559 - Supp. #44

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #44

Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #45

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #45

Supplemental Reporting DETECTIVE MICHAEL BURNS - BPD - 4849 - Supp. #46

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #46

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #47

Supplemental Reporting DETECTIVE TODD MCCLUSKY - BPD - 7198 - Supp. #47

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #48

Supplemental Reporting DETECTIVE TORY DAUGHERTY - BPD - 4517 - Supp. #48

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #49

Supplemental Reporting OFFICER RUSSELL THOMAS - BPD - 2267 - Supp. #49

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #50

Supplemental Reporting DETECTIVE TORY DAUGHERTY - BPD - 4517 - Supp. #50

Approving SERGEANT GREGORY SCOTT - BPD - 6037 - Supp. #51

Supplemental Reporting OFFICER IVY THORNTON - BPD - 7514 - Supp. #51

Supplemental Reporting DETECTIVE BRADLEY FICEK - BPD - 5559 - Supp. #52

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #52

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #53

Supplemental Reporting DETECTIVE TIMOTHY MCCOY - BPD - 5428 - Supp. #53

Assisting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #54

Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #54

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #54

Assisting SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #54

Arresting DETECTIVE RICHARD BARKES - BPD - 2268 - Supp. #54

Assisting OFFICER WILLIAM LYNN - BPD - 7843 - Supp. #54

Arresting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #54

Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #55

Supplemental Reporting OFFICER RUSSELL THOMAS - BPD - 2267 - Supp. #55

Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #57

EXH·S·+ "I"

| |
|---|
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #57 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #58 |
| Supplemental Reporting DETECTIVE TODD MCCLUSKY - BPD - 7198 - Supp. #58 |
| Supplemental Reporting DETECTIVE BRADLEY FICEK - BPD - 5559 - Supp. #59 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #59 |
| Supplemental Reporting OFFICER AMY KEIL - BPD - 4185 - Supp. #60 |
| Approving LIEUTENANT PETER AVERY - BPD - 4061 - Supp. #60 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #61 |
| Supplemental Reporting DETECTIVE TOMMY WALTERS - BPD - 4818 - Supp. #61 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #62 |
| Supplemental Reporting OFFICER RUSSELL THOMAS - BPD - 2267 - Supp. #62 |
| Approving LIEUTENANT PETER AVERY - BPD - 4061 - Supp. #63 |
| Supplemental Reporting OFFICER SHAWN ALBERT - BPD - 7136 - Supp. #63 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #64 |
| Supplemental Reporting DETECTIVE MATTHEW DICK - BPD - 6687 - Supp. #64 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #65 |
| Supplemental Reporting DETECTIVE TODD MCCLUSKY - BPD - 7198 - Supp. #65 |
| Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #66 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #66 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #67 |
| Supplemental Reporting CID RECORDS CAROL HOERR - BPD - 2323 - Supp. #67 |
| Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #68 |
| Approving LIEUTENANT TIMOTHY STANESA - BPD - 4729 - Supp. #68 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #69 |
| Supplemental Reporting DETECTIVE TORY DAUGHERTY - BPD - 4517 - Supp. #69 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #70 |
| Supplemental Reporting OFFICER RUSSELL THOMAS - BPD - 2267 - Supp. #70 |
| Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #71 |
| Approving LIEUTENANT TIMOTHY STANESA - BPD - 4729 - Supp. #71 |
| Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #72 |
| Approving LIEUTENANT TIMOTHY STANESA - BPD - 4729 - Supp. #72 |
| Supplemental Reporting DETECTIVE CLAY WHEELER - BPD - 4496 - Supp. #73 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #73 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #74 |

| |
|---|
| Supplemental Reporting SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #74 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #75 |
| Supplemental Reporting SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #75 |
| Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #76 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #76 |
| Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #77 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #77 |
| Approving LIEUTENANT TIMOTHY STANESA - BPD - 4729 - Supp. #78 |
| Supplemental Reporting DETECTIVE MATTHEW DICK - BPD - 6687 - Supp. #78 |
| Approving LIEUTENANT TIMOTHY STANESA - BPD - 4729 - Supp. #79 |
| Supplemental Reporting DETECTIVE MATTHEW DICK - BPD - 6687 - Supp. #79 |
| Approving LIEUTENANT TIMOTHY STANESA - BPD - 4729 - Supp. #80 |
| Supplemental Reporting DETECTIVE TOMMY WALTERS - BPD - 4818 - Supp. #80 |
| Approving LIEUTENANT TIMOTHY STANESA - BPD - 4729 - Supp. #81 |
| Supplemental Reporting DETECTIVE MATTHEW DICK - BPD - 6687 - Supp. #81 |
| Supplemental Reporting DETECTIVE JOHN ATTEBERRY - BPD - 6143 - Supp. #82 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #82 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #83 |
| Supplemental Reporting DETECTIVE RICHARD BARKES - BPD - 2268 - Supp. #83 |
| Supplemental Reporting DETECTIVE MICHAEL JOHNSON - BPD - 5837 - Supp. #84 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #84 |
| Supplemental Reporting DETECTIVE BRADLEY FICEK - BPD - 5559 - Supp. #91 |
| Approving SERGEANT PAUL WILLIAMS - BPD - 3771 - Supp. #91 |

## Incident People

| Other | CURTIS LEWIS | | | | | |
|---|---|---|---|---|---|---|
| Sex. M | Race: B | DOB:09/25/1955 | Age: 49 | SSN: 334462313 | Original Report | 100014654 |

Address:    501 S MCLEAN    05/25/2000
            BLOOMINGTON, IL 61701-

Home Phone:  (309) 829-9166    03/21/1998

Employment: R B WHITE INC SHEET METAL, 1204 N LINDEN    BLOOMINGTON IL 0-0 - (309) 828-6295 -    10/04/1997
            WELDER

Hgt: 510, Wgt: 165, Medium, Brown Eyes, Black Hair, Short Hair, Mustache&Beard, Dark Brown Skin    03/08/2005

# IN THE ELEVENTH JUDICIAL CIRCUIT COURT, MCLEAN COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS )

)    CASE NO: _2005 CF 000265_

vs )

)

Defendant: _DAMONI K. CLEMON_ )    Defendant's date of birth: _12/30/74_

)

## APPEARANCE BOND

The DEFENDANT, whose signature appears below, has been charged with the offense(s) _Unlawful use of weapons / Felon posse_
_Use weapon / Fire arm statute, Possess Amount (up to 15 gr) controlled sub., Permitting unlawful_ _use of Building_

Bond for this offense has been set at $ _Twenty Five Thousand and no cents_ dollars.

Therefore, in consideration of being released from custody, the DEFENDANT, and the BOND DEPOSITOR, if other than the DEFENDANT AGREE:

1. That they are indebted to the PEOPLE OF THE STATE OF ILLINOIS in the full amount of the appearance bond stated above.
2. That as security for the performance of this agreement, there has been deposited the following:
   - A. 10% BOND. The defendant/Depositor has deposited, in cash, 10% of the bond as stated above.
   - B. RECOGNIZANCE or Individual Bond.
   - C. REAL ESTATE BOND. (Separate sworn statement and schedule required. Judicial approval required.)
   - D. CASH BOND: No 10% to apply.
3. That the DEFENDANT SHALL:
   - A. Personally appear to answer charge(s) at the MCLEAN COUNTY LAW AND JUSTICE CENTER, Bloomington, Illinois, on the _25th_ day of _MARCH 2005_ at _9:00_ _A.M._ and appear each time as ordered by the Court, until discharged.
   - B. Not violate any criminal statute of any jurisdiction.
   - C. Not leave the State of Illinois without permission of the Court.
   - D. Give written notice of any address change to the Clerk of this Court within 24 hours at P.O. Box 2420, Bloomington, Illinois, 61702-2420.
   - E. Other Conditions: _____

If victim is a family/household member, as defined by 725ILCS5/112-A-3(3):
- ❏ F. Refrain from contact or communication with _____ for a minimum period of 72 hours following the defendant's release from custody.
- ❏ G. Refrain from entering or remaining at residence for a minimum period of 72 hours following the defendant's release from custody.

### NOTICE TO PERSON PROVIDING BOND MONEY IF OTHER THAN THE DEFENDANT

I hereby acknowledge that I have posted bond for the defendant named above. I further understand that if the defendant fails to comply with the conditions of this bond, that the Court shall enter an Order declaring the bond to be forfeited and used to pay costs, attorney's fees, fines, child support obligations or other purposes authorized by the Court. I further understand upon disposition of the case, part or all of the bond may be used to pay fines, costs, fees, restitution, child support or other financial obligations of the defendant.

Print Depositor's Name _____

Signature X _____

SS# _____

Date of Birth _____

TIN# _____

Print Address _____

City, State, Zip _____

FILED

MCLEAN COUNTY

MAR ... 2005

### ASSIGNMENT OF BOND BY THE DEFENDANT

I hereby authorize the return of the bond herein posted to the person shown above after all conditions of this bond have been met.

Signature of DEFENDANT: X _____

### CERTIFICATE OF DEFENDANT

I, the Defendant, do hereby state that I know and understand the terms and conditions of this appearance bond as shown on the FRONT AND REVERSE SIDE of this appearance bond form. I understand further that if at any time prior to the final disposition of the charge(s), I escape or am released on bond and fail to appear in Court when required I hereby waive my right to confront the witnesses against me; the trial and/or sentencing can proceed in my absence; I forfeit the security posted; judgement will be entered against me for the full amount of this bond, plus costs; a warrant may be issued, in which event additional bond may be required to be posted. I understand and accept the terms and conditions set forth above and on the reverse side of this appearance bond.

Signature of DEFENDANT X _____

SS# _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_

TIN# _____

Print Address _XV 1202 W Olive_

City, State, Zip X _Bloomington IL 61701_

Signed and acknowledged before me and bond received by me

this _15th_ day of _March 2005_

_____
Official Signature

_Correctional Officer_
Official Capacity

WHITE- Court Copy    GREEN - State's Attorney's Copy    CANARY - Police Copy    PINK - Defendant's Copy    GOLD - Bond Depositor's Copy if other than defendant

Case No. 05CF265    **RECORD SHEET**    Page No. 3

| DATE | | | JUDGE AND REPORTER | (cont) | COSTS | |
|---|---|---|---|---|---|---|
| | | | | | Dollars | C |
| 7 | 18 | 05 | Dozier/ Jennings | back-up t 05CF367. RCD | | |
| 7 | 21 | 05 | PWI | *Supplemental Discovery Compliance Pursuant To Rule 412 Filed* | | |
| 08 | 10 | 05 | TWC | Supplemental Discovery Compliance Pursuant to Rule 412 filed | | |
| 8 | 15 | 05 | Dozier/ Jennings | D, in custody, with jur track; ASA Horne. D waver jury in 05CF367, which will be trial Tomorrow. RCD | | |
| 08 | 15 | 05 | /ne | Supplemental Discovery compliance Pursuant to Rule 412 filed. | | |
| 8 | 18 | 05 | Dozier | D Consoled this date w 05CF367 and sentencing is now set 9/27/05 J 9:00. This case set for status on 9/27/05 at 9:00 pm RCD | | |
| 9 | 6 | 05 | /ne | Correspondence filed- copy sent to PD office. | | |
| 9 | 27 | 05 | Dozier Jennings | Status. D, in custody, with jur track; ASA Eves. Pet. to Appoint Expert to Determine Fitness filed, instanter heard and denied. D sentenced to a TDL of 25 year DOC in Case 04CF1052 and 05CF367. On State motion, This case dismissed. D's bonds ordered transferred to 05CF367 Sa Order RCD | | |
| 9 | 28 | 05 | M | Bond released # 1086562 | | |
| 9 | 28 | 05 | TWI | 1,610 00 Bond transferred to 05CF367 | | |
| 9 | 28 | 05 | M | 1244 00 Bond transferred to 04CF1052 | | |
| 9 | 28 | 05 | MV | 20 00 Bond transferred to 99CF1392 | | |
| 9 | 28 | 05 | MV | 376 00 Bond transferred to 03CM1795 | | |
| 10 | 5 | 05 | VV | ADR REPORT SUBMITTED AND FILED | | |

# STATEMENT OF CLAIM 2ND PORTION
## DAMON I CLEMON VS FNU SANDERS et, al

I HAD BEEN ARRESTED ON OR AROUND 6-16-04 BY DEFENDANT MATTHEW DICK, DETECTIVE #6687, OF BLOOMINGTON POLICE DEPT AND WAS HUMILIATED, VERBALLY ABUSED, HELD ON FALSE CHARGES FOR TRIAL UP TO AND INCLUDING 12-20-05 WHEN THE HONORABLE JUDGE DOZIER NOLE-PROSSED ALL CHARGES ON CASE 04 CF 552 AND DISMISSED THE CASE 18 MONTHS AFTER I WAS ARRESTED FOR LACK OF EVIDENCE (EXHIBIT "A")

THE CRIMINAL CASE PROCEDURE INVOLVED IN THE 2ND PORTION OF THIS STATEMENT OF CLAIM HAS BEEN COMPLETED AND CHARGES DISMISSED.

ALL FACTS STATED ARE FROM A MASTER INCIDENT SUMMARY REPORT #J00408171 AND ARE BROKEN DOWN AS THE ATTACHED INCIDENT NARRATIVES WRITTEN BY DEFENDANT MATTHEW DICK # 6687 OF THE BLOOMINGTON POLICE DEPARTMENT DETECTIVE DIVISION

(4)
5)

# STATEMENT OF CLAIM 2ND PORTION

ALL FACTS STATED ARE FROM AN INCIDENT SUMMARY REPORT #200408171 AND ARE BROKEN DOWN AS INCIDENT NARRATIVES BY DETECTIVE MATTHEW DICK #6687 OF THE BLOOMINGTON POLICE DEPARTMENT.

<ins>EXHIBIT "B"</ins>   REPORT NARRATIVE DATED 7-1-2004

PAGE 20 OF 30 - 6-16-04 DETECTIVE DICK #6687 ARRESTED DAMON I CLEMON FOR AGGRAVATED DISCHARGE OF A FIREARM BASED ON THE WORD OF A RECENTLY RELEASED CONVICTS WORD WHOSE WIFE WAS IN THE VECHILE WITH DAMON I AND A TOMMIE SLAYTON BOTH WHO TOLD THE DETECTIVE IT DIDNT HAPPEN. CONSP. RACY, OBSTRUCTION, 8TH AND DUE PROCESS VIOLATION BY DEFENDANTS ON 6-18-04

<ins>EXHIBIT "B"</ins>   <ins>PARAGRAPH 3</ins>

PAGE 21 OF 30 DETECTIVE DICK IS INTIMIDATING (720 ILCS 5/12-6) DICKEY WINTERS ASKING HER TO SUBORN PERJURY (720 ILCS 5/32-3) PERJURE HERSELF (720 ILCS 5/32-2) WITH HEARSAY STATEMENTS TO IMPLICATE CLEMONS IN A SHOOTING. NOTE: SHE ASKS "DICK" WHY WOULD HE EVEN SHOOT IN THE FIRST PLACE? HE WASN'T A SHOOTER, SHE HEARD WINTERS WAS THE SHOOTER.

AN 8TH AND DUE PROCESS VIOLATION

<ins>EXHIBIT "B"</ins>

PAGE 21 OF 30 PARAGRAPH 4 - ALLEGED WITNESS DICKEY WINTERS TELLS DETECTIVE "DICK" SHE WASN'T IN THE CAR, SHE HEARD WINTERS SHOT AT CLEMON, SHE KNOWS FOR A FACT WINTERS CARRIES A PISTOL.

EXHIBIT "B" PAGE 21 OF 30 PARAGRAPHS 5, 6, 7 - DETECTIVE DICK LIKE PUTTING HIS WORDS INTO DICKEY WINTERS MOUTH ABOUT WANTING TO KILL SOMEONE — SHE SAID "MAYBE I'LL HAVE SOMEONE TO BEAT YOUR ASS.

Thursday, 26 October, 2006 12:27:07 PM
E-FILED
Clerk, U.S. District Court, ILCD

# STATEMENT OF CLAIM 2ND PORTION

EXHIBIT "B" PAGE 21 OF 30, PARAGRAPH 5 — SUBORNATION OF PERJURY, 8TH AMENDMENT AND DUE PROCESS VIOLATION COMMITTED BY OFFICER DICK — PARAGRAPH 5 - "DID YOU TELL WINTERS ABOUT ABOUT KILLING HIM OR DID YOU TELL WINTERS YOU'D HELP CLEMONS KILL HIM — SHE SAID NO —

EXHIBIT "B" PAGE 22 OF 30 PARAGRAPH 1 - DETECTIVE DICK INTIMIDATES DICKEY-WINTERS, THREATENS HER ABOUT LYING THEN SLANDERS, HUMILIATES AND DEMEANS CLEMONS. 8TH AMEND VIOLATION.

## 7-2-04 NARRATIVE 13

EXHIBIT "C" PAGE 23 OF 30 — PARAGRAPH 2 - DETECTIVE DICK INTIMIDATED DICKEY-WINTERS NOW ITS TOMMIE SLAYTONS TURN — SLAYTON WAS OFFERED POSSIBLE FAVOR IF HE OFFERED INFORMATION AGAINST CLEMONS ON THE DAY OF THE SHOOTING — DICK WOULD TELL THE STATES ATTORNEY ABOUT ANY COOPERATION HE GAVE.

EXHIBIT "C" PAGE 23 OF 30 PARAGRAPH 4 "DICK" SUBORNS PERJURY, COMMITS OFFICIAL MISCONDUCT, AND OBSTRUCTS JUSTICE BY LYING TO SLAYTON ABOUT THERE BEING OTHER WITNESS WHO SAY THEY SAW CLEMONS SHOOTING AT WINTERS.
SLAYTON TELLS DICK, CLEMONS WASNT SHOOTING, HE DIDNT HAVE A GUN.

EXHIBIT "C" PAGE 23 OF 30 PARAGRAPH 7 —
DETECTIVE DICK NOW ASSUMES ALL 3 PEOPLE ARE LYING, CLEMONS, SLAYTON AND DICKEY WINTERS STATEMENTS ARE DIFFERENT AND CONTRADICT PHYSICAL EVIDENCE.
## NOTE:

CONSISTENT STATEMENTS SO FAR SHOW CLEMONS DIDNT HAVE A GUN, AND THE 3 WITNESSES WERENT SURE HOW MANY TIMES WINTERS SHOT. (PARAGRAPH 2 LAST SENTENCE.)

**7) Statement of Claim**

EXHIB.+ "D" - Narrative 14 - 7-28-04 Detective Dick #6687.

Page 1 Paragraph 2 - Dick Retrieved Several Illegally Recorded phone Calls That Clemon made From The Jail - 4th - 8th - Due Process violations - Violating Illinois Compiled Criminal statutes 720 ILCS 5/14-3 (G), 720 ILCS 5/14-3 (i) (ii) And Any Information obtained In violation of The Eavesdropping Articels Are Not Admissible In Any Civil, Criminal Trial, 720 ILCS 5/14-5. without Court order, Permission of Both Parties or Notice To Prisoners At McLean County Jail or Bloomington Ill Jail By Signs posted Near phones or Informational Warnings/Recordings To All Prisoners when They picked up The phone Receiver That Calls Are Subject To Taping By These Law Enforcement people.

Recordings Are Illegal, violations of 725 ILCS 5/108A-1 Thru 725 ILCS 5/108A-8

EXHIB.+ "D"

6-27-04 Call Taped Illegally - Need People To Give Statements - Note -

Everyone "Dick" Talked To said Clemon Didn't Have A Gun - (Whats up with That?)

Clemon Asked Monica To Get Statements From The Kids That They Saw Fatso Doing what He was Doing.

At No Time Did Detective Dick, Asst Chief Sanders, officer Albert or Any other officer Respond To Monicas Call About A Gunman Being At Her House Trying To Kill Clemon — She Did I.D. Shaun.

First Name Unknown

8th Amendment violation
4th Amendment violation

# STATEMENT OF CLAIM   2ND PORTION

EXHIBIT "E"   DATED 8-6-04   EXHIBIT "F"   DATED 8-20-04
INCIDENT SUMMARY NARRATIVES SHOW 6-16-04
Detective "DICK" - MONICA CALLED 911 - SHAUNTEZ
WINTERS WAS SHOOTING AT HER CAR AND CLEMON.

EXHIBIT "F" REPORT 16 D+D 8-20-04 2ND PARAGRAPH
Detective SICINSKI AND DICK TALKED TO COURTNEY
WILLIAMS - SHE SAW NOTHING BUT HEARD THAT
WINTERS HAD BEEN SHOOTING AT CLEMON.

EXHIBIT "F" PARAGRAPH 3 - MONICA HAD CALLED 911
ON 8-12-04 TELLING POLICE THAT SHAUNTEZ
WINTERS CAME TO HER HOUSE AND SHOT UP
HER CAR AND AT CLEMON AND SHOUTED
"I'M GOING TO KILL YOU", "I GOT YOU"
          POLICE DID NOTHING TO CALM OUR
FEARS OR BUILD UP OUR CONFIDENCE IN THEM.
VIOLATING OUR 8TH AMENDMENT RIGHTS.

EXHIBIT "G"   9-15-04 -

       ALL PHONE RECORDS OBTAINED BY
POLICE OFFICERS OF ALL PHONE NUMBERS CALLED
BY CLEMON, CHRISTINA DICKEY, AND CHRISTINA
WINTERS

       WERE THE 18 PHONE NUMBERS OBTAINED
TO IDENTIFY THE CALLERS, TO 'HARASS AND
INTIMIDATE THEM, BUT PRESSURE ON THEM TO
TELL STORIES ABOUT CLEMON?

9)      # STATEMENT OF CLAIM   2ND PORTION

EXHIBIT "H" REPORT 19-4-14-05 — Detective violates
PARAGRAPH 2 OF WHAT WAS TO BE SEIZED IN THE WARRANT
AND IN PROCESS OBSTRUCTED JUSTICE, VIOLATED ATTORNEY
CLIENT PRIVILEGE, ILLEGALLY SEIZED LEGAL MAIL FROM
CLEMONS ATTORNEY, LEGAL MOTIONS, CORRESPONDENCE
LEGAL NOTES — NO WHERE DID THE COURT
STATE SEIZE LEGAL DOCUMENTS IF THEY ARE
THEIR AND USE THEM IN COURT AGAINST HIM.
        THAT VIOLATED MY 4TH, 6TH, 8TH AND
DUE PROCESS CLAUSE OF THE 14TH AMENDMENT.

EXHIBIT "H"   POLICE/STATE COMPROMISED DAMON'S
DEFENSE BY THEIR ILLEGAL SEIZURE OF HIS LEGAL
MAIL, LEGAL DOCUMENTS TO AND FROM COUNSEL
TURNED THEM OVER TO THE STATE FOR THEM
TO USE AND COMPROMISE A FAIR TRIAL.

EXHIBIT "I" — SUPPLEMENTAL REPORT FROM
CRIME LAB 4-29-05 PROVES THAT EXHIBIT
I INDICATES THAT DAMON I CLEMON MAY
NOT HAVE DISCHARGED A FIREARM WITH
EITHER HAND.

        SUPPORTING MY CLAIMS OF FALSE ARREST,
POLICE STALKING, ILLEGAL WIRE TAPS, BLIND EYE
RECKLESS AND DELIBERATE INDIFFERENCE TO MY
INNOCENCE AND THE PROSECUTORIAL MISCONDUCT
ENCOURAGED AND ALLOWED BY THE STATE TO TRY
AND FRAME ME FOR A CRIME I HADN'T
COMMITTED.
        VIOLATING MY 4TH, 8TH AND DUE PROCESS
RIGHTS.

(4)

18).                 STATEMENT OF CLAIM                    2ND PORTION

I ALSO WANT THIS HONORABLE COURT TO
BE MADE AWARE OF THE FACT THAT THIS FALSE
ARREST VIOLATED ME WITH MY PAROLE, I WAS SENT
BACK TO PRISON, IDOC FOR TWO MONTHS UNTIL I COULD
RAISE #7500°° FOR BOND.

I FELL #9,000°° BEHIND IN MY RENT, LOST SOME
PROPERTY, MY REPUTATION WAS HARMED AND MY LIVELIHOOD
SERIOUSLY EFFECTED.

FOR THE 18 MONTHS, 545 DAYS OF HAVING MY
PERSONAL FREEDOMS JEOPARDIZED BY FALSE CHARGES,
FALSE ARREST, FORCED TO BE THE FOCUS ON A
CONSPIRACY BY ALL 8 DEFENDANTS TO VIOLATE ME
WHILE BREAKING ILLINOIS COMPILED STATUTES OF
CONSPIRACY TO OBSTRUCT JUSTICE, SUBORN PERJURY,
COMMIT PERJURY, OFFICIAL MISCONDUCT, THREATEN,
HUMILIATE AND HOLD ME UP FOR RIDICULE IN MY
COMMUNITY.    RELIEF REQUESTED    2ND
                                                          PORTION

FOR THE PAIN, SUFFERING, VIOLATIONS OF
MY RIGHTS, CONSTITUTIONAL AND STATE TORTS
COMMITTED AGAINST ME BY THESE PEOPLE I
DAMONI CLEMON ASK THIS HONORABLE COURT
TO AWARD ME COMPENSATORY, PUNITIVE
DAMAGES IN THE FOLLOWING AMOUNTS:

250°° DOLLARS PER DAY FROM EACH DEFENDANT AS
AN INDIVIDUAL TO PLAINTIFF CLEMON SINCE THE
DATE OF HIS ILLEGAL ARREST, 6-16-04, FALSE ARREST,
FOR AGGRAVATED DISCHARGE OF A FIREARM #04CF552
AND THEIR RECKLESS AND DELIBERATE INDIFFERENCE
TO THE TRUTH AND MY CONSTITUTIONAL RIGHTS.
TO THE DATE THE CHARGES WERE NOLE-PROSSED
BY JUDGE DOZIER ON 12-20-05.

(4)
(11)

<u>RELIEF REQUESTED</u>                    2ND PORTION

#500.00 PER DAY FROM EACH DEFENDANT IN THEIR
OFFICIAL CAPACITIES TO PLAINTIFF CLEMONS
FOR EACH HE WAS FALSELY ARRESTED 6-16-04
THRU 12-20-05 THE DATE THE HONORABLE
JUDGE DOZIER NOL-PROSD ALL COUNTS
ASSOCIATED WITH CASE 04CF552, ALLEGED
AGGRAVATED DISCHARGE OF A FIREARM AND
TURNED A BLIND EYE TO THE TRUTH, SUBORNED
PERJURY OF FELLOW OFFICERS, COMMITTED PERJURY,
OBSTRUCTED JUSTICE AND COMMITTED OFFICIAL
MISCONDUCT AGAINST PLAINTIFF CLEMONS.

PUNITIVE DAMAGES:

25,000.00 FROM EACH DEFENDANT NAMED IN THEIR
OFFICIAL CAPACITIES FOR THEIR BLIND EYE, RECKLESS
AND DELIBERATE INDIFFERENCE IN CONSPIRING TO
ARREST AND CONVICT ME OF CRIMES I DIDNT
COMMIT BASED ON PERJURY, INSUFFICIENT EVIDENCE,
OBSTRUCTION OF JUSTICE, OFFICIAL MISCONDUCT,
AND FALSE TESTIMONY. THESE WERE LAW
ENFORCEMENT OFFICERS WHO WERE TO SERVE
AND PROTECT, COURT OFFICIALS/AGENTS
WHO WERE TO GUARANTEE FREEDOMS NOT
RESTRICT THEM.
    THIS AMOUNT FOR DAMAGES IS FROM
EACH DEFENDANT TO PLAINTIFF CLEMONS.

(4)
(2)

## PUNITIVE DAMAGES
2ND PORTION

15,000.00 FROM EACH DEFENDANT NAMED IN THIS ACTION AS AN INDIVIDUAL FOR THEIR DELIBERATE DISREGARD FOR THE TRUTH, THE STRESS, THREATS, HUMILIATION, FEAR AND INTIMIDATION I FACED FROM DAY ONE 6-16-04 THRU 544 Additional DAYS I HAD TO Endure Being Denied my Freedom And Self-Esteem.

I Request THIS HONORABLE COURT Appoint me Counsel TO Help Rynt THIS WRONG Doing By THE Defendants.

I THANK THIS Court For Its

Time, I Request A Jury TRIAL.

By Signing THIS Complaint, I Certify THAT THE FACTS STATED IN THIS complaint ARE TRUE TO THE Best of my Knowledge, INFORMATION AND Belief. I UNDERSTAND THAT IF THIS CERTIFICATION IS Not CORRECT, I MAY Be SUBject TO SANCTIONS By THIS Court.
Signed THIS 15th DAY of 30ct 2006

Damon Clemon
DAMON I CLEMON
K83753 WICC
RR4 Box 196
Mt. STERLING ILL 62353

2ND PORTION

# EXHIBITS

DAMON I CLEMON PLAINTIFF IN THIS ACTION
AND ALL DEFENDANTS NAMED IN THE ATTACHED
EXHIBITS, INCIDENT NARRATIVE REPORT: 200408171
AND THE FOLLOWING INCIDENT NARRATIVE DATES:

EXHIBIT "A"  MOTION TO DISMISS/NOLE PROS 12-20-05
EXB. "B"  REPORT 12  D+D 7-1-04
EXHIBIT "C"  REPORT 13  D+D 7-2-04
EXHIBIT "D"  REPORT 14  D+D 7-28-04
EXHIBIT "E"  REPORT 15  D+D 8-6-04
EXHIBIT "F"  REPORT 16  D+D 8-20-04
EXHIBIT "G"  REPORT 18  D+D 9-15-04
EXHIBIT "H"  REPORT 19  D+D 4-14-05
EXHIBIT "I"  REPORT 20  D+D 4-29-05

WITNESSES LISTED WITH NARRATIVE REPORT
19 INCIDENT IMAGE ARE FOR PLAINTIFF
CLEMON AND INCLUDE MONICA POOLE,
WILLIAM BEARD, SHIRLEY MCLAURIN, CHRISTINA
DICKEY WINTERS, KAUSOUJDRIA OWIMEE, LAURA WARE,
AND TOMMIE SLAYTON.

STATE OF ILLINOIS          )          IN THE CIRCUIT COURT OF THE
COUNTY OF MC LEAN          )          ELEVENTH JUDICIAL CIRCUIT

THE PEOPLE OF THE STATE OF ILLINOIS    )
VS.                                    )      NO. _04CF 552_
*BAMONI CLEMON*                        )

### MOTION TO DISMISS

Now comes the People of the State of Illinois by the State's Attorney of McLean County, and moves this Court to:

☑ nol-pros (all) Counts _____ of the above-entitled cause
☐ dismiss the Rule to Show Cause
☐ dismiss the Petition to Revoke

for the following reason(s): _____

_____

_____

12/20/05 _____          _M. _____
Date                               (Assistant) State's Attorney

### ORDER

This cause, coming on to be heard on the foregoing motion, and the Court being fully advised in the premises:
IT IS, THEREFORE, ORDERED that (all) Counts _____

☑ of the above-entitled cause be and the same is/are hereby nol-prossed.
☐ the Rule to Show Cause is hereby dismissed.
☐ the Petition to Revoke is hereby dismissed.

☐ Defendant is ordered to pay costs from bond.

☐ There is a warrant outstanding for Defendant's arrest on this charge.  Said warrant is hereby recalled.

☐ Defendant is in custody of the McLean County Sheriff's Department on this charge.  If Defendant is not being held on any other charges or detainers, said Department is hereby ordered to release Defendant from custody.

☐ Defendant's bond is ordered released, after it is applied to fine and costs in this cause, in accordance with applicable statutes.

☐ Defendant's bond is ordered transferred to case number _____ as well as all SOS supporting documents including Notice of SSS and officer's sworn report.

12/20/05 _____          _____
Date                               Judge

white:      Court Copy
yellow:     State's Attorney
pink:       Defendant
goldenrod:  Defense Attorney

EXHiBit "A"    2ND PORTION

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
COUNTY OF MCLEAN

THE PEOPLE OF THE )
STATE OF ILLINOIS )
                         )
         VS.            )                NO.    04 cf 552
                         )
Damoni Clemon

RECEIVED
APR 6 2005
MCLEAN COUNTY
PUBLIC DEFENDER

<u>SUPPLEMENTAL DISCOVERY COMPLIANCE PURSUANT TO RULE 412</u>

Now comes the People of the State of Illinois by M. Jane Foster, Assistant State's Attorney, in and for the County of McLean, State of Illinois, and presents as Discovery Compliance herein the following:

1. Pursuant to Supreme Court Rule 412(a) see attached exhibits 25-38 for additional discovery.

Respectfully Submitted,

M. Jane Foster
Assistant State's Attorney

I, M. Jane Foster, hereby certify that the answer to Defendant's Motion for Discovery in People v. Clemon, is complete to the best of my knowledge, information and belief and all the exhibits referenced in this Answer have been provided to the defense.

M. Jane Foster
104 W. Front St., Room 605
PO Box 2400
Bloomington, IL  61701
(309) 888-5400

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorney's of record of all parties to the above cause by:
____ Depositing a true and correct copy of the same in the U.S. Post Office or post office box in the City of Bloomington, Illinois, enclosed in an envelope with postage fully prepaid on the ____ day of _____, 2005.
____ Hand delivering a true and correct copy of the same on the _6_ day of _April_, 2005.

**Incident Narrative 12      07/01/2004    18:35**

**Supplemental Reporting DETECTIVE MATTHEW DICK - BPD, ID # 6687**

On 6-16-04, I (Detective Dick) arrested Damoni Clemon for Aggravated Discharge of a Firearm. The victim, Shauntez Winters, related that Clemon was in a white Chevy Caprice with a blue hood with Christina Winters in the front passenger seat, and Tommie Slayton in the rear seat. Clemon shot at him from the vehicle in the parking lot between apartment buildings in the 900 block of West Grove and 900 block of West Front. When I spoke to Clemon, he claimed that he was the one that was shot at by two unknown assailants as he drove the white Caprice eastbound on Grove Street. Clemon claimed to have been alone in the car.

On 6-18-04, I interviewed Christina Dickey-winters. I advised Dickey-winters that our conversation was being audio and video recorded. I further advised her that she was not under arrest and free to leave at any time. I asked Dickey-winters to tell me what she was doing on Wednesday 6-16-04. Dickey-winters related that she had been staying with her mother at 1021 West Hovey Street, Normal. She woke up between 1100 and 1300 hours. Her cell phone was dead so she decided to walk to her friend's apartment on West Front Street to get her charger that she left there. When she arrived she observed her husband, Shauntez Winters, in front of the apartment building. He started an argument with her concerning her son and the fact that Damoni Clemon is the father of her son. During the argument, Winters hit her in the side of the head. Dickey-winters walked away and proceeded into her friend's apartment to get her charger and some clothes. Dickey-winters then paused for several seconds in the interview as if she were thinking. She then continued her story as if she had left the apartment but she had not explained how or when she left.

Dickey-winters related that approximately thirty to forty five minutes later, she went back to the apartment on Front Street to retrieve the rest of her belongings. She claimed that she ran into her husband again in the rear parking lot. She was dizzy and dazed from being hit in the head and was trying to figure out what to do. She decided to walk away and proceeded through the alley, down Grove, past the apartments, and down the street. When she got to the intersection of Allin and Grove or possibly Lowe Street, she heard five or six shots. She started to walk back to see what was going on but thought better of it and continued walking to her brother's house at the corner of Mulberry and Lee Street. Thirty to forty five minutes later, she saw Winters riding in the back seat of a police car. She then started receiving numerous phone calls from people including Winters, harassing her and cussing her out about what had taken place. Several messages were left on her phone. One of the things said to Dickey-winters by her husband was that she had "fucked up" and that she should have her baby's daddy come get him. Dickey-winters erased all these messages except for one left by Winters and one left by his cousin. I advised Dickey-winters that I wanted to record those messages before she left, however Dickey-winters ended up walking out of the interview before I could record the messages.

Dickey-winters advised that the problems with her husband stem from her having a baby with Clemon while Winters was in the Department of Corrections. He got out on 3-19-04 and has claimed that he will get her back. She stated that he has destroyed her apartment and threatened Clemon numerous times. She doesn't know what Winters has physically done to Clemon other than take his money on one occasion.

After speaking with Dickey-winters for several minutes, I had her go through the events that occurred on Wednesday 6-16-04, for a second time. As she went back through, she contradicted herself and it was clear that she was fabricating at least portions of her story. The second time she advised that she got up around 1230-1300 hours. She was staying at her mother's house on West Hovey. She walked to the 900 block of West Front Street but stopped at her brother's house along the way. Her brother lives at the corner of Mulberry and Lee. She arrived at the 922 West Front around 1345 to 1400 hours. I asked Dickey-winters, who her friend was that she was visiting and what apartment she lived in. Dickey-winters refused to tell me and stated that she didn't want to get her involved. As Dickey-winters approached 922 West Front Street, Winters was walking down the hill of the Lange's alley. He immediately started a verbal argument asking, "what the fuck" she was doing there. She stepped inside the building with Winters following her. In the hallway of the apartment building, Winters grabbed her and hit her in the head with a bottle in his hand. Dickey-winters did not think that Winters meant to hit her the way that he did. He did not seem intoxicated and this was the only physical contact. I asked her if she received any injuries from this incident. Dickey-winters stated that she might still have a lump. She took lots of Tylenol that day and her eyes were blurry and jittery. I asked her if there were any witnesses to this incident. She stated that her friend saw Winters follow her into the apartment but didn't think she would be willing to say anything.

Once in the apartment, Dickey-winters went to the closet where she retrieved her charger and two bags. She then went out the back door, through the alley to Grove Street. Winters continued to follow her until she was eastbound on the sidewalk. He then stopped and started talking to someone at the first apartment building off the alley. I asked her what time it was that she got out of the area. She stated that she couldn't give me a time but everything happened in maybe fifteen minutes. She then walked back to her brother's house. I asked her who was there. She stated that it was just her, her brother, and her brother's pregnant girlfriend. I asked her how long she stayed at her brother's. She related that she has been there this whole time. I reminded her that she previously told me that she returned to the apartment on Front Street and asked how long she was at her brother's before going back. She then stated, "Oh, I went back to Front Street after I went around the block." She claimed that when Winters stopped following her, she walked around the block and snuck back in the front door of the apartment building without Winters seeing her. She retrieved the rest of her belongings then walked to her brother's house and hasn't left except Thursday night to get cigarettes and something to drink.

**McLean County Incident Summary Report - 200408171**

Date: 03/31/2005 15:54

EXHiBiT "B"

2ND PORTiON

I asked Dickey-winters if she was with Clemon at all on Wednesday. She stated that the last time she saw him was around the corner from her mom's house. She then corrected herself and said her brother's house. This was in the 500 block of West Mulberry Street. Dickey-winters related that Clemon's girlfriend lives over there and there is also a guy who Clemon helps work on his suburban. I asked her when it was that she saw Clemon in the 500 block of West Mulberry. She stated that it was Wednesday around 1330 to 1335 hours. She was on her way to Front Street from her brother's house. She stated that she was walking down Lee Street toward Market Street. She did not talk to him, she just waved, said "what's up", and continued on her way to Front Street. I asked her who was with him. She said there was some big old black man with gray hair. This subject lives across from Monica Poole's house. Poole is Clemon's girlfriend. Clemon and the subject were standing by the subject's garage. Dickey-winters claimed that she has not seen Clemon since then and to the best of her knowledge he was in jail.

I then asked Dickey-winters for more information about the gunshots. I asked her what time it was when she heard the shots. She related it was fifteen to twenty minutes after she walked off. She also advised that she was on Oak Street near the fire department when she heard the shots. I asked for clarification on which fire department she was referring to. It was determined that she was referring to the station on Lee Street at Jefferson. Dickey-winters claimed that she was near the intersection of Oak and Jefferson when she heard the gunshots. This location is approximately five to six blocks away from where she initially told me she was when she heard the shots. I asked her how loud the shots were and if she could tell how far away they were. She stated that it was loud enough that she could make out that they were gunshots. They came from behind her as she was walking and there were 5 to 6 shots. She did not recall seeing any vehicles immediately after hearing the shots.

I then asked Dickey-winters what time she got back to her brother's residence and how long it was after she heard the shots. She stated that it was maybe ten minutes and she knew she got back to the house before 1500 hours. I asked her how she knew this. She stated because one of her brother's friends gets off at 1500 hours and she was there before he got there. This friend works at one of the dollar stores and goes to her brother's house every day immediately after work. I asked her who was at her brother's house by the time she got back. She stated, her brother's friend, her, her brother, and her brother's "baby's momma". I asked for their names however Dickey-winters refused to tell me. She stated, "they don't have anything to do with it." I explained to Dickey-winters that I had been told that she was in the car with Clemon when he shot at Winters, and that they were potentially her alibi. Her response was, "that I was in the car when he shot at him?...Why would he even shoot at him in the first place." Dickey-winters still would not provide me with anyone's name and claimed that she would have to get their permission before she could tell me.

Dickey-winters claimed that she was not in the car and had heard that Winters was the one that had shot at Clemon. She stated that she knows for a fact that Winters carries a pistol. She also made that statement that, "He (Clemon) would have had to have made it from over there on Mulberry, where he was at, pretty darn quick to get over there and do all that, without me seeing him." We then argued back and forth whether Clemon would have had time to get to Front Street and back. During this exchange, Dickey-winters advised that Clemon was on Mulberry Street when she was walking back to her brother's residence. This contradicts what she told me earlier, which was that the last time she saw Clemon was when she was walking to Front Street from her brother's residence. I drew a rough diagram of the neighborhoods we were talking about to clarify where exactly Dickey-winters claimed she saw Clemon. She indicated on my diagram that she saw Clemon on Mulberry Street just west of Lee Street, on the north side of the street. With Clemon was the old man that she mentioned previously and a tall thin white male subject with blonde hair. Dickey-winters claimed that she also saw the white caprice parked on Oak Street facing north at the corner of Mulberry Street. She saw the vehicle as she was walking on Lee Street. Dickey-winters was now claiming that she heard the shots and ten minutes later saw Clemon and these subjects along with the car, on Mulberry Street. She advised that she did not notice any damage to the Caprice.

I then asked Dickey-winters if she had said anything to Winters about killing him, whether she was serious or not. She did not immediately deny it and responded that Winters has been rubbing it in her face that Clemon was the father of her child. I asked her again and she stated, "Not that I was going to kill him, I said maybe I was going to have somebody beat your ass." I asked if she ever told Winters that she was going to have Clemon kill him. She said no. I asked if she ever told Winters that she was going to help Clemon kill him. She said no. I also asked her if anyone told her to come talk to me and if anyone told her what to tell me. To both questions she stated, no.

I then showed Dickey-winters photos of Clemon, Winters, Monica Poole, and Tommie Slayton. Dickey-winters Identified Clemon, Winters, and Poole. When she viewed Slayton's photo she said she did not know who he was and had never seen him before. She then said that she may have seen him on the street at some time and that he kind of looked like a subject she knew as Brian. I asked Dickey-winters if she was in a car with this subject on Wednesday. She stated, no.

I then asked Dickey-winters when was the last time she talked to Clemon on the phone. She stated that it was on Wednesday, right before the shooting when she was walking back to her brother's house. I asked her when was the last time she talked to Winters. She advised that it was before her phone died while at her mom's house. They talked about her supposedly messing with some guy.

EXHIB.+ "B"

2ND PORTION

I advised Dickey-winters that she would likely be in more trouble for lying about this incident then if she just told me the truth. I stated that I could understand if she were scared of Clemon and Winters because they are both violent. Dickey-winters stated that neither one are violent. As she said this, she stood up and walked out of the room. This concluded the interview.

The diagram that I drew and the original DVD recording were placed into my locked cabinet and later submitted to standard evidence locker #8.

Further investigation will be forthcoming and this case remains PENDING.

# McLean County Incident Summary Report - 200408171

Date:   03/03/2005 15:54

Exhibit "C"

Page: 23   of 30

2ND PORTION

### Incident Narrative 13   07/02/2004   23:27

#### Supplemental Reporting DETECTIVE MATTHEW DICK - BPD, ID # 6687

On 6-19-04, I (Detective Dick) conducted an interview with Tommie Slayton. Slayton was in custody for Obstructing Justice after he provided Officer Blain with a false name to avoid traffic citations. See case number 200408309 for more details pertaining to Officer Blain's arrest. Once in custody Slayton told Officer Blain that he was willing to speak with me regarding a shooting that occurred on 6-16-04. Officer Blain then contacted me.

I began the interview by advising Slayton that our conversation was being audio and video taped. I then read Slayton a statement of his rights which he stated he understood. I told Slayton that I could not make him any promises but I would advise the State's Attorney of any cooperation that he gave me. I asked him what happened on the day of the shooting. Slayton advised that he was at his girlfriend's house. Sometime in the afternoon, Damoni Clemon picked him up. They drove around for approximately an hour and then saw one of Clemon's girls walking down the street. Slayton later identified this subject as Christina Dickey-Winters. Dickey-Winters was walking near the corner of Monroe and Allin northbound toward Market Street. Dickey-Winters got in the car with them. Dickey-Winters and Clemon were talking about something however Slayton wasn't paying attention. Clemon got mad at something Dickey-Winters said. They then drove to Front Street to get Dickey-Winters' clothes and other belongings. When they arrived at the apartments on Front Street, Slayton saw "Shaun". Slayton later identified Shaun as Shauntez Winters. Dickey-Winters got out of the car and was talking with Winters for awhile. Dickey-Winters also went into one of the apartment buildings for awhile. Winters went into one of the apartment buildings for awhile also. Slayton had gotten out of the car for awhile but then got back into the car. Dickey-Winters got back into the car and Winters and Clemon got into a verbal argument. Winters took his shirt off as if he wanted to "box". It was at this point that Slayton saw that Winters had a black automatic handgun. Clemon put the car in reverse and Winters started shooting at the car. Slayton did not know how many times Winters shot. ✓

I asked Slayton how many times Clemon shot back. Slayton advised that Clemon did not shoot back. Slayton stated that as soon as the shooting started, he ducked down in the back seat. The back window behind him "busted" from Winters shooting at the car. I asked Slayton where this occurred at. Slayton stated that it occurred in the alley behind the apartment buildings. I drew a diagram of the area showing the 900 block of Front Street, the 900 block of Grove Street, Langes' alley and the apartment buildings. I had Slayton show me on the diagram, where the shooting took place. Slayton indicated that the shooting actually took place in the parking lot. I also included the car in the diagram and asked which way it was facing. Slayton indicated that the car was facing east toward Lange's alley. Winters was standing to the rear of the car. Slayton also indicated where everyone was seated in the car. He related that Clemon was driving, Dickey-Winters was in the front passenger seat, and he was in the rear seat directly behind Clemon.

I asked Slayton what Clemon did when the shooting started. Slayton stated, that he guessed he ducked down, and that he was ducked down himself. Slayton demonstrated how he ducked down by putting his head between his knees. After the shooting they went to the 500 block of West Mulberry Street. Slayton went back to his girlfriend's house and later heard that Winters showed up on Mulberry Street on a bicycle with a gun. A girl came to his girlfriend's house to use the phone to call it in. I asked Slayton if he saw Winters on Mulberry Street with a gun. Slayton related that he saw Winters walking up Mulberry toward Mason with a gun in his hand. He was not on a bike however.

I advised Slayton that all the witnesses were saying that Clemon was the one shooting at Winters. Slayton insisted that Clemon was not shooting and did not have a gun. Slayton claimed that he would have seen Clemon shooting. However by the way Slayton demonstrated how he was ducking, his head was below the window and facing toward the floor. Slayton claimed that Clemon was ducking also.

I showed Slayton photos of Clemon, Winters, and Dickey-Winters. He identified them as the subjects he had been referring to. I also asked him if he had seen or talked to any of these subjects since the shooting. He stated that he hasn't. He claimed that he did talk to Monica Poole about the shooting. I asked him if anyone told him what to tell me. He stated no.

It should be noted that Clemon, Dickey-Winters, and Slayton have now all given a taped statement regarding this incident. All three statements are very different and contradict the physical evidence. Slayton claimed that Winters caused the damage to the car by shooting at it. This would be impossible if Winters was positioned to the rear of the car as Slayton claimed. The damage to the car was from front to rear as if Clemon were shooting at Winters and the bullets were skimming off the side of the car. Slayton also claimed that Winters was firing a black automatic handgun. An automatic handgun ejects the shell casings. No shell casings were found at the scene. Slayton's version of the shooting is consistent with Winters' version with the exception of who was shooting at who.

After the interview, Slayton was transported to the Mclean County Jail. The original DVD recording and the diagram I drew, were placed into my locked cabinet. They were later placed into standard evidence locker #8.

Further investigation will be forthcoming and this case remains PENDING.

**McLean County Incident Narrative Report - 200408171**

Date:  09/20/2004 09:36

EXHIBIT "D"

2ND PORTION

Page: 1    of  2

Incident Narrative 14    07/28/2004    21:16

**Supplemental Reporting DETECTIVE MATTHEW DICK - BPD, ID # 6687**

On 6-16-04, I (Detective Dick) arrested Damoni Clemon for Aggravated Discharge of a Firearm. Clemon was transported to the Mclean County Jail and posted bond on 6-20-04 despite a parole hold that I had requested. Clemon was arrested again on 6-21-04 for Possession of Cannabis. I called the parole office and an Illinois Department of Corrections (IDOC) warrant was issued for Clemon. Clemon again was transported to the Mclean County Jail.

On 7-6-04, I (Detective Dick) retrieved several recorded phone calls that had been placed from the jail. In some of these phone calls, Clemon is speaking to someone about his shooting case and telling the person to arrange some witnesses on his behalf. The following is a brief synopsis of some of the calls placed by Clemon. For an exact record, refer to the recordings.

On 6-26-04 at approximately 1635 hours, Clemon called (309) 827-9597 and speaks to an unknown female subject (possibly Erica Redmond). Approximately eight minutes into the phone call, Clemon makes a comment about smoking the cannabis in front of the police officers in order to keep the police from getting into the house he was at. Approximately ten minutes and thirty seven seconds into the call, Clemon states, "Go see Diyez...He's in the pod... That mother fucker in the pod with him Tell him do not fuck with Shaun, tell him to stay his distance from Shaun...You know who I'm talking about right, who do I got the case on." Approximately thirteen minutes and twenty seconds into the call, Clemon and the female subject have the following exchange,

Clemon:  Oh, you know what I need you all to do?
Female:  What?
Clemon:  Man, you got to ante up on me some witnesses
Female:  Okay
Clemon:  You know um, (inaudible) and them
Female:  Who?
Clemon:  (inaudible) and them, (inaudible) my family and them on Grove
Female:  Uh huh
Clemon:  All them signed cases on me right.
Female:  You know what's fucked up (inaudible) see some real shit Money, I sat in the window and I watched that bullshit.
Clemon:  You were on the block?
Female:  On some real shit, I was on that block, I was watching you out the fucking window nigger. I can tell you how long you sat out there, what happened, and, cause he (inaudible) mad at Chrissy and tell Chrissy he was going to march off. Nigger that's how all that shit popped off, I already know.
Clemon:  Chrissy up smack on his ass though
Female:  Okay now all that bullshit, on some real shit
Clemon:  I need some witnesses doll. I can't cop out to this one.
Female:  Well no you're not going to cop out on that bullshit.
Clemon:  I need some witnesses man, get me some witnesses on the block man.
Female:  all right
Clemon:  Cause (inaudible) they all witnesses against me.
Female:  okay
Clemon:  Then um, Get um, You know to drop in on the Walls right?
Female:  right
Clemon:  cause they got that little corner alley right there
Female:  right. Muhamed thinks (inaudible) on me. He's been telling me to watch the block. Stay cool.
Clemon:  Right, let them know I'm going to need them for some witnesses.
Female:  Okay

On 6-26-04 at approximately 1657 hours, Clemon again called (309) 827-9597 and spoke to the same female subject. This call was placed almost immediately after the previous call and their conversation continued. The following is a portion of their conversation beginning approximately two minutes and fifteen seconds into the call.

Clemon:  Hey Erica
Female:  What
Clemon:  You can take care of that part for me? Cause I got like six witnesses, I got six witnesses on that block that say they seen me and I know damn well there wasn't nobody out there.
Female:  I know there wasn't anybody out there either, and I know I was looking out the window, so I'll go up to the county my god damned self, and have my cousin come with me cause looked out the window. (inaudible) was out front, there wasn't nobody out there but (inaudible) that white boy Jimmy, and me and my cousin was looking out the fucking window, nobody else see what the fuck happened over there.

# McLean County Incident Narrative Report - 200408171

EXHIBIT "D"  2ND PORTION

On 6-27-04 at approximately 1323 hours, Clemon called (309) 829-3327 and spoke with Monica Poole. Poole in turn makes a three way call to Clemon's mother. Approximately eight minutes and forty five seconds into the call Clemon is again talking about how six people were giving statements against him and he needed some people to give statements for him that saw what happened on his behalf. Clemon tells Poole, "the people on the block where you at Monica...the block where you stay at...you need to get the kids and the rest of them to sign statements on my behalf, that they actually seen that fat mother fucker, doing what he was doing."

These three phone calls were burned to a CD-R and placed into standard evidence locker #8.

Further investigation will be forthcoming and this case remains PENDING.

**Incident Narrative 15**    08/06/2004    20:18

**Supplemental Reporting DETECTIVE MATTHEW DICK - BPD, ID # 6687**

On 6-16-04, a shooting occurred in the alley/ parking lot between the 900 block of West Grove Street and 900 block of West Front Street. Damoni Clemon has been arrested and charged with Aggravated Discharge of a Firearm in reference to this incident. According to the incident detail report created by Metcom, the initial call to 911 occurred at 15:27:35 hours from the number (309) 828-8981 located at 903 West Grove. I (Detective Dick) have received an audio recording from Metcom of this call and also a second call to Metcom that came in from a cell phone. The recording also includes the police radio traffic and other related calls.

The first call to 911 is a female subject who identifies herself as Antoinette. This is likely Antoinette Thomas who Officer Albert spoke to at the scene. During this call, a very excited Antoinette claims that "they just got done shooting in the alley by my apartment. Antoinette describes the suspect vehicle as a white Chevy with a blue top. The suspect shot five or six times. The car left by turning onto Grove Street. Antoinette claimed that there were four or five people in the car. She does not know the subjects but sees them all the time. She also claimed that her children were outside playing at the time of the incident. Antoinette advised she was calling from her friends apartment, 903 West Grove, apartment four.

The second call to 911 is initially a female subject but a male subject quickly gets on the phone. The female advised that somebody was shooting in back of the apartments on Front and Grove. The male subject then takes the phone and explains that the shooting took place in the alley and parking lot between the 900 block of Grove and Front Street. The dispatcher asked if he saw any suspicious vehicles. The caller advised that he saw a white Chevy with a blue hood. The recording breaks away from this call while officers are dispatched. When the call resumes, a female can be heard in the background stating that there were three subjects in the car. The dispatcher then asked the male caller if they were shooting in the air or shooting at something. The caller stated they were shooting at someone. The subject being shot at got on a bike and rode off. This subject was wearing all black clothing.

At approximately the same time that these calls were coming in, Monica Poole called the Bloomington Police Department and spoke with Assistant Chief Sanders. Assistant Chief Sanders transferred Poole to Metcom. According to the Incident Detail Report created by Metcom, Metcom began speaking to Poole at 15:33:09. Poole stated, "They're at my house right now with pistols, trying to shoot at my nigger...They shot at my door and my car." Poole advised that she was at her address, 512 West Mulberry Street. The dispatcher asked Poole if she knew who the subjects were. She said, "No, They been shooting at him all month, now they're outside with pistols, walking up on him. The dispatcher asked if they were in a car. Poole stated, "what?, no they're walking now." The dispatcher asked how many people there were. After several seconds, Poole stated, "I don't know, I can't see, I'm inside. He won't let me go outside cause they got guns." Again the dispatcher asked if Poole knew any of the subject's names. Poole stated, "His name is Shaun. I don't know his last name. I see only one. His name is Shaun. He's a fat ass. I can't think of his last name." Poole described Shaun as wearing a black shirt with blue jeans. When the dispatcher asked what kind of gun he had, Poole did not answer. The dispatcher asked Poole if she could see the subject. Poole stated that she could. The dispatcher asked Poole if she could see a weapon in his hand. Poole stated, "I don't see it now. I can't (inaudible) outside." Eventually Poole advised the dispatcher that the subject was walking down Mulberry Street. It should be noted that Poole is the girlfriend of Damoni Clemon.

Another call to 911 recorded on the tape, is from a female subject who advised she pulled up to her sister's residence at the corner of Oak and Mulberry and saw several subjects with guns. The caller could not provide any descriptions of the armed subjects other than they were black. This call came into Metcom at 15:37:05.

A few minutes after this call and Poole's call, Officer Albert advises that he is back in the 900 block of West Grove. According to the Incident Detail Report, this is at 15:48:55 hours. A few seconds later, Officer Albert advises that he sees Shauntez Winters on a bicycle in the 800 block of West Olive Street. Officer Albert makes contact with Winters and Winters is eventually transported to the Bloomington Police Department for an interview.

The original recordings were placed into my locked cabinet. On 8-6-04, I placed the original recordings into standard evidence locker #8.

Further investigation will be forthcoming and this case remains PENDING.

McLean County Incident Narrative Report - 200408171

Incident Narrative 16     08/20/2004     20:20

Supplemental Reporting DETECTIVE MATTHEW DICK - BPD, ID # 6687

On 6-16-04, I (Detective Dick) arrested Damoni Clemon for Aggravated Discharge of a Firearm. This was in reference to an incident that occurred in the alley and parking lot between the 900 block of West Front Street and West Grove Street. The first call to 911 in reference to this incident, was received at approximately 1527 hours. At approximately 1533 hours, Clemon's girlfriend, Monica Poole, reported to Metcom that Shauntez Winters was in the 500 block of West Mulberry Street, shooting at her car and Clemon. Poole had initially called the Bloomington Police Department and was then transferred to Metcom. Poole advised the dispatcher that she could see Winters as she was talking.

On 8-12-04, Detective Sicinski and I (Detective Dick) went to 901 East Walnut Street in an effort to locate Poole. This was Poole's last known address according to the EJS database. Upon arrival at 901 East Walnut, I spoke to Poole's grandmother, E.M. Williams. Williams advised that Poole was now residing at 306 South Gridley. Williams asked why I needed to speak to Poole. I advised her that in was in reference to a shooting that occurred approximately one and a half to two months ago. Williams stated that she knew what incident I was talking about. I asked Williams what she knew about this incident. She stated she didn't know anything. Standing behind Williams was Courtney Williams. Courtney stated that she knew something about the shooting. I asked Courtney what she knew. Courtney advised that she was staying with Monica at 512 West Mulberry Street. On the day of the shooting, Poole would not let Courtney go outside all day or night. Courtney did not hear any gunshots and Poole did not mention anyone being outside with guns. Some time since then, Poole told Courtney that Winters had been shooting at Clemon. Courtney did not remember where Poole said the shooting occurred.

We then proceeded to 306 South Gridley and spoke to Poole. Poole advised that she knew nothing about the shooting other than Shauntez Winters coming to her house on Mulberry Street and shooting her car and at Clemon. She did not see much because she was told to get back into the residence by Clemon. She called 911 and reported the incident. She could see Winters waving a gun around as she spoke to the dispatcher. I asked Poole if she would provide a recorded statement and she agreed. Poole could not provide a video recorded statement at the police department because she was expecting her children to arrive any minute. I did however have a digital audio recorder with me. The following is a summary of that recorded interview.

Poole advised that she called the police somewhere between 1530 and 1600 hours. She called because the window of her car had been shot. She advised that her car is a white Chevy Caprice with a blue hood. I asked her who shot her car. She stated that it was Shaun Winters. She later identified Shauntez Winters from a photo lineup. Poole claimed that she did not actually see Winters shoot her car and that the car had already been shot when she called. I asked her how she knew that he was the one that shot it. Poole stated that he more or less told her. She claimed that Winters was outside waving a pistol around and yelling, "I got you" and "I'm going to kill you." She described the gun in Winters' hand as a black automatic. At no time however did she see him firing shots or hear any shots.

I then asked Poole to relate the sequence of events that day. Poole advised she was outside her residence (512 West Mulberry Street) replacing the taillight bulbs on a truck. As she was working on the truck, she turned her head and noticed the damage to her car window which was parked nearby. She had been working on the truck for approximately one half hour. Poole went inside the residence to call the police to report the damage to her window. While she was looking for the phone, she heard screaming. She then went outside however Damoni Clemon yelled at her to get back in the house. Clemon then pointed out Winters who was near the intersection of Oak and Mulberry. I asked Poole how long Clemon had been there. She advised that he had been there for some time and estimated that he had been there since approximately one and a half to two and a half hours before Winters arrived. She stated that Clemon had been talking with the old man across the street and helping him work on a mower. It was determined that this old man was William Beard. I asked Poole if Clemon noticed the damage to the car. She stated that he did not mention it and he probably would have if he knew about it.

Poole advised that Winters was approximately seventy five feet away from her when he was waving the gun around. Winters was in the area for ten to fifteen minutes until he left running in the direction of a house in the neighborhood that he has been hanging out at. Poole did not know the address of this house. A few seconds later, a police officer arrived and shortly after that, Winters' "baby's momma" called and stated that Winters got into a green Malibu. While all this was going on, Clemon was still across the street standing next to Beard.

I asked Poole if Clemon went anywhere in her car. She stated that he didn't. She stated that the car was at the house all day except the short trip she made to Advanced Auto Parts to get the taillight bulbs. She also claimed that she had the only key to the car. When Poole left to get the taillight bulbs, Clemon was at the house. He was in the same spot when she got back a few minutes later.

I asked Poole if Clemon told her what to tell me. She stated no. I asked Poole if Clemon told her to call the police to make a false report of shooting on Mulberry Street. She stated no. I asked her if she talked to Clemon on the phone at all that day in the hours leading up to the shooting. She stated that she talked to him when she went to get the bulbs. He asked her how long she was going to be because he did not like to be at home alone with the kids. I asked her if Clemon told her about anything happening in the 900 block of West Grove Street that day. She stated no but he told her about an argument he had with Phyllis Johnson on Olive Street.

EXHIBIT "F" a portion

Detective Sicinski then asked Poole if Clemon and her were driving around anywhere together that day. She said no. He also asked what time it was that she went to the auto parts store. She related that it was at least twenty to thirty minutes before she called the police.

After the interview, I returned to the Bloomington Police Department and downloaded the audio recording to my computer. I then burned the recording to a CD-R and placed the CD-R into standard evidence locker #8. Also placed into standard evidence locker #8 was the photo lineup shown to Poole that contained a photo of Shauntez Winters.

Further investigation will be forthcoming and this case remains PENDING.

STATE OF ILLINOIS

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
COUNTY OF MCLEAN

THE PEOPLE OF THE          )
STATE OF ILLINOIS          )
                           )
       VS.                 )            NO.   04 cf 552
                           )
Damoni Clemon

R E C E I V E D

APR 2 1 2005

McLEAN COUNTY
PUBLIC DEFENDER

## SUPPLEMENTAL DISCOVERY COMPLIANCE PURSUANT TO RULE 412

Now comes the People of the State of Illinois by M. Jane Foster, Assistant State's Attorney, in and for the County of McLean, State of Illinois, and presents as Discovery Compliance herein the following:

1.  Pursuant to Supreme Court Rule 412(a) see attached exhibits 39-47 for additional discovery.

Respectfully Submitted,

*M. Jane Foster*

M. Jane Foster
Assistant State's Attorney

I, M. Jane Foster, hereby certify that the answer to Defendant's Motion for Discovery in People v. Clemon, is complete to the best of my knowledge, information and belief and all the exhibits referenced in this Answer have been provided to the defense.

*M. Jane Foster*

M. Jane Foster
104 W. Front St., Room 605
PO Box 2400
Bloomington, IL  61701
(309) 888-5400

## PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the attorney's of record of all parties to the above cause by:

____  Depositing a true and correct copy of the same in the U.S. Post Office or post office box in the City of Bloomington, Illinois, enclosed in an envelope with postage fully prepaid on the ____ day of _____, 2005.

____  Hand delivering a true and correct copy of the same on the 20 day of April, 2005.

# McLean County Incident Narrative Report - 200408171

Date:  09/20/2004 09:37                    EXHIBIT "G"                    Page: 1    of 2

### Incident Narrative 18    09/15/2004    18:45

### Supplemental Reporting DETECTIVE MATTHEW DICK - BPD, ID # 6687

On 6-16-04, I (Detective Dick) arrested Damoni Clemon for Aggravated Discharge of a Firearm. This was in reference to an incident that occurred in the alley and parking lot between the 900 block of West Front Street and West Grove Street.

On 7-6-04, I received records from Sprint PCS, pertaining to Damoni Clemon's cell phone. These records show that the number (309) 287-7013, belongs to Damoni K Clemon. The records also show all phone calls pertaining to this number for 6-16-04 which was the day of the shooting. These records indicate that at approximately 1522 hours, Clemon called (309) 310-1755. This is Monica Poole's cell phone number. It is also approximately the same time that the initial phone call about the shooting was made to 911.

These phone records also document all the phone calls made and received by Clemon while in the interview room at the Bloomington Police Department. These calls are documented in incident narrative number 17.

The records of Clemon's phone also show that he placed a call to Poole at approximately 2339 hours. Clemon had already been transported to the Mclean County Jail and was in their custody when this call was placed.

The records further show that on 6-16-04, Clemon made five outgoing calls to Christina Dickey. He received two incoming calls from Dickey, and there were an additional nine calls from Dickey that were not answered but routed to his voicemail. When I interviewed Dickey on 6-18-04, she advised that the only time she saw Clemon on 6-16-04 was when she was walking to and from the 900 block of West Front Street. She did not speak to him and only waved and said, "what's up". When I asked when the last time was that she spoke to him on the phone, she advised that it was right before the shooting as she was walking to her brother's house. According to Clemon's cell phone records, all the calls to and from Dickey, occurred after the shooting.

On 7-1-04, I received the cell phone records from U.S. Cellular, pertaining to Christina Dickey's cell phone. The records show that the number (309) 262-9254 is in Shauntez Winters name with Christina Winters also on the account. This phone number is used by Christina Dickey (Winters) while Shauntez Winters uses the phone number of (309) 262-8600. The records for Dickey's phone show that she called Shauntez Winters twice during the early morning hours of 6-16-04. She received seven calls from Winters on the afternoon of 6-16-04, prior to the shooting. Fifteen calls were placed to, or received from Damoni Clemon during the afternoon and evening of 6-16-04, all after the shooting. She received one call from Winters' phone and placed four more calls to Winters' phone, during the evening of 6-16-04, when Winters was in custody.

On 7-1-04, I received the cell phone records from U.S. Cellular, pertaining to Shauntez Winters' cell phone. The records show that the number (309) 262-8600 is in Shauntez Winters' name. The records also show the calls to and from Dickey.

On 7-9-04, I received subscriber information from U.S. Cellular for several phone numbers that were identified from the previous records received. The phone number and corresponding subscriber are listed below.

(309) 242-1944 ------ Amanda Hodel, 406 East Monroe St., Bloomington
(309) 242-5637 ------ Aubrey Hursey, 1204 West Seminary, Bloomington
(309) 242-2810 ------ George Dorsey, 1919 Tracy Drive apt 7, Bloomington
(309) 242-6906 ------ Elizabeth Crabtree, 623 Orlando apt 108, Normal
(309) 242-7793 ------ Christy Patton, 924 West Front apt 6, Bloomington

On 7-13-04, I received subscriber information from Sprint PCS for several phone numbers that were identified from the previous records received. The phone number and corresponding subscriber are listed below.

(309) 287-6003 ------ Deborah Hursey, 1319 Mount Vernon Dr, Bloomington
(309) 310-1755 ------ Monica Poole, 901 East Walnut St, Bloomington
(309) 310-2039 ------ Tammy Jean Ward, PO box 3141, Bloomington
(309) 310-6369 ------ SR Jackson, 1006 West Grove St apt 1, Bloomington
(309) 310-6592 ------ David Cassell, 407 Leland St, Bloomington
(309) 310-6593 ------ Raphael Whitlow, 807 Livingston St, Normal

On 7-14-04, I received subscriber information from U.S. Cellular for several phone numbers that were identified from the previous records received. The phone number and corresponding subscriber are listed below.

(309) 262-5673 ------ Jason Tolan, 909 Roosevelt apt 1, Bloomington
(309) 232-9227 ------ Cholena Morris, 620 NE Adams apt 89, Peoria

EXHiBiT "G"

2ND PORTION

Date:   09/20/2004 09:37

Page: 2    of 2

(309) 262-9997 ------ Jerry Crowder, 708 North Lee apt 3, Bloomington
(309) 262-0361 ------ Tahnisha McDonald, 904 Turnberry Dr apt C, Bloomington
(309) 262-0817 ------ Vivan Warner, 1329 North Linden St, apt 3, Bloomington
(309) 262-0802 ------ Ramon Thomas, 603 West Monroe St apt B, Bloomington
(309) 262-5800 ------ George Dorsey, 1919 Tracy Dr apt 7, Bloomington

All of these records were placed into standard evidence locker #8.

This case is CLOSED BY THE ARREST OF DAMONI CLEMON.

# McLean County Incident Narrative Report - 200408171

3:06-cv-03195-HAB-CHE    # 5-2    Page 23 of 34

Date: 04/15/2005 08:52

EXHiBit "H"

2ND PoRTiot

Page: 1    of 1

**Incident Narrative 19    04/14/2005    08:45**

**Supplemental Reporting DETECTIVE MATTHEW DICK - BPD, ID # 6687**

On 6-16-04, Damoni Clemon was arrested for Aggravated Discharge of a Firearm. This was in reference to an incident in the 900 block of West Grove with Shauntez Winters as the victim.

On 4-7-05, Damoni Clemon and his girlfriend, Monica Poole, were at the Bloomington Police Department in reference to a different investigation. While at the police department, Clemon and Poole consented to the search of their residence at 306 South Gridley, Bloomington and signed separate permission to search forms. The forms that they signed further gave officers permission to take from the premises, "any letters, papers, materials, or any other property or things which they desire as evidence for criminal prosecution in the case or cases under investigation." In addition to the consent to search by both Clemon and Poole, Detective Wheeler obtained a search warrant for 306 South Gridley. Among the listed items to be seized in the warrant, were "indicia of residency, including but not limited to male's clothing, documents belonging to Damoni Clemon, photographs which depict Damoni Clemon or indicate residency, lease agreements or other paperwork indicating residency."

A search was then conducted of 306 South Gridley. Among the items located was a manilla envelope addressed to Damoni Clemon. The return address on the envelope was for the public defender's office. Inside this envelope was paperwork pertaining to discovery for the incident on West Grove Street. Also included in this envelope were five sheets of notebook paper that appear to be a handwritten motion to dismiss and quash arrest. The motion appears to have been written or dictated by Clemon. In one paragraph of this motion, Clemon states that on 6-16-04, he went to an address with Christina Dickey. Clemon goes on to state that upon arrival, he is confronted by Shauntez Winters who was armed. Winters tries to take the gun off of safety so Clemon puts his car in reverse and drives away. Clemon then states that he saw that Winters had the gun off safety so Clemon started firing shots in the air over the car.

I later received a copy of the contents of this envelope from Detective Donath. I scanned the handwritten motion and have attached the images to this report. Also scanned and attached were copies of the permission to search forms and search warrant.

This case remains CLOSED BY THE ARREST OF DAMONI CLEMON.

39

Reason For Quas Arrest

I Domoni Clemon Fear For my life And At each
time I Report the Incident, Bloomington
Police Department did Nothing But Kept let
him call me promote problems and left my
life at stake and I went about everything
By the law Until the last time when I Really
Seen him About to Take my life Right Before
my own eyes.

       he was still ~~getta~~ on Prorole
At the time just like I Domoni Clemon Was.
And If the Police was trying to help me they
went have let him tried ~~there~~ two or three
Time. Trully when they ~~see~~ Say my Name
Domoni Clemon they Alway lock me up no
matter what.

Motion To Dismiss and Quas Arrest

On the above Date 5- -04 I Damoni Clemon (Victim) Drove up In the 500 Block West Mulberry and got out of the Car When a young man name (Bobby) call me Damoni let me talk to you. At that time he had two other people with him, his girlfriend (Shannon) and Shauntez Winters. At that time Bobby got to asking Damoni Clemon If they got Into a fight do he think Shauntez Winters will help him Damoni or me (Bobby) from that point the Fight have Broke out. Damoni was Fighting And trying to Get his car Keys. Damoni Clemon money have Fell to the ground $3000.00 and they All three Rush him (Bobby, Shannon, Shauntez, Which Shauntez grab the money and they all left And Ran down the street In the 600 Block of Mulberry And got In a Red 4 Door Chevy Caprice. Damoni Clemon (Victim) then call 911 And waited (30min to a hour) for them to Arrive And than made A Report which didn't nothing happen and they Both was on parole at the Time

witness (Williams Beard          (Shirley McLaurin
507 W Mulberry St        512 W Mulberry
Bloomington IL 61701

A few weeks later Damoni Clemon (Victim) Was coming down Allen going towards Market Street when (Shauntez Winters) Seen (Victim) Damoni Clemon And call out a "G" a "mo" help me get this Nigger. At that time I was fight for my life and Beating Deathless By 12 to 13 people And crawl from the grass to the street were I climb over. In Back of a Chevy pick Truck were the last thing I heard one of them say "mo" get the gun Shot that Nigger (Damoni Clemon). I Damoni got drop off In the 500 Block of Mulberry crawl my way to the yard and layed there Until I got some Straight and some how make It up staires to 512 W Mulberry, Until I Recover then got up and went to the Bloomington Police Department and made another Report. Which at that time was nothing did But pictures Being Taking of me And all the Bruises And Suspects Still sit free while on paarole.

On the above Date 6-16-04 I Damon. Clemon got a call from Christina Winters a.k.a. Christina Dickey Asking me to take her to go get her Clothes, Which I Damon Clemon did not thinking Nothing

EXHIBIT "H"  2ND PORTION

of It. When I arrive (Shaunter Winters) and
A man on a Bike was standing in the Alley
Right By the Build. I Damon Clemon stop
Right at the Build. other end from the Alley
Shaunter Winter ask me Damon Clemon whats
up (money) I told him Nothing. At that time he
was standing Right at the Druiver Door staring
hard at me with a semiautomatic hand gun
Still asking me whats up (money) I told him nothing
And Put the car In Reverse. While he kept Runing
on the side of me trying to take his gun off safety
But once I seen him take It of safety I started
fire shot's In the air over the car Away from
him And went home told my gielfriend as we
Both call the police, At that time Shaunter Winters
was standing Behind me yelling and waving
the gun again and the police still havin't come.
And once again my Report was still look over
And he was neve charge with any one of
them charges while on proBole.

2ND PORTION        EXHIBIT "H"

Witness: Monica Poite
901 E. Walnut
Bloomington IL 61701

Witness
Williams Beard                    Witness
507 W Mulberry St                 Shirley McLaurin
Bloomington IL 61701              512 W Mulberry St
                                  Bloomington IL 61701


Witness
Christina Dickey        Krousounda Ounce
208 ½ N Gridley         306 E Woods
Bloomington IL 61201    Bloomington IL 61701


Laurie a wire           Tommie Slayton
306 E Wood              504 W Locust St
Bloomington IL 61701    Bloomington IL 61701

2ND PORTION        EXHIBIT "H"

## PERMISSION TO SEARCH

I, _Damon Clemmon_, have been informed

by _Richard Barkes_ who made proper identification as

(an) authorized law enforcement officer of the Bloomington Police Department of my

CONSTITUTIONAL RIGHT not to have a search of the premises and property owned by

me and/or under my care, custody and control, without a search warrant,

Knowing of my lawful right to refuse consent to such a search, I willingly give my

permission to the above named officer(s) to conduct a complete search of the premises and

property, including all buildings and vehicles, both inside and outside of the property located

at _306 South Gridley, Blm, IL_

The above said officer(s) further have my permission to take from my premises and

property, any letters, papers, materials, to any other property or things which they desire as

evidence for criminal prosecution in the case or cases under investigation.

The written permission to search without a search warrant is given by me to the above

officer(s) voluntarily and without any threats or promises of any kind, at _11 20_ A.M.

on this _7TH_ day of _April_ ~~15~~ _2005_

Signed _Damon Clemmon_

Witness: _M.C. Joh_          Witness: _Paul Williams_
title: _Detective_           Title: _Sgt._

2ND PORTION        EXHIBIT "H"

P E R M I S S I O N   T O   S E A R C H

I, MONICA POOLE , have been informed by
DET. CLAY WHEELER and

who made proper identification as (an) authorized law enforcement officer(s) of the
BLOOMINGTON POLICE DEPARTMENT

of my CONSTITUTIONAL RIGHT not to have a search made of the premises and property
owned by me and/or under my care, custody and control, without a search warrant.

Knowing of my lawful right to refuse to consent to such a search, I willingly give
my permission to the above named officer(s) to conduct a complete search of the pre-
mises and property, including all buildings and vehicles, both inside and outside of
the property located at 306 S. GRIDLEY, LOWER APT.

The above said officer(s) further have my permission to take from my premises and
property, any letters, papers, materials or any other property or things which they
desire as evidence for criminal prosecution in the case or cases under investigation.

This written permission to search without a search warrant is given by me to the above
officer(s) voluntarily and without any threats or promises of any kind, at 9:06 A.M.
on this 7TH day of APRIL 2005 , at BPD .

Signed _____

Witness: _____          Witness: _____
         BPD
Adress: _____           Address: _____
Phone: (H) 434-2594 (B) _____       Phone: (H) _____ (B) _____

2ND PORTION

EXHIBIT "H"

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
COUNTY OF MCLEAN

## SEARCH WARRANT

TO ALL PEACE OFFICERS OF THE STATE:

On this date April 7, 2005 Detective Clay Wheeler has subscribed and sworn to a Complaint for Search Warrant before me. Upon examination of said Complaint, I find it states facts sufficient to establish probable cause for the issuance of a warrant to search the following described place, person or objects for the items listed.

I THEREFORE COMMAND THAT YOU SEARCH:

A. The entire premises of a residential structure located at 306 S. Gridley, Bloomington, McLean County, Illinois, including both upstairs and downstairs.

B.     AND, IF FOUND, SEIZE THE FOLLOWING:

Firearms, ammunition, cocaine, cannabis or any other controlled substance; U.S. currency in such a quantity and vicinity to which controlled substances or records or drug paraphernalia as to be a product of their sales or a means by which their sales are accomplished; drug paraphernalia; indicia of residency, including but not limited to male's clothing, documents belonging to Damoni Clemon, photographs which depict Damoni Clemon or indicate residency, lease agreements or other paperwork indicating residency.

ISSUED this 7th of April '45  a.m./p.m.

_____
Circuit Judge

47

Date:  05/02/2005 13:54

$EXHIBIT "I"$

2ND PORTION

**Incident Narrative 20    04/29/2005    12:16**

**Supplemental Reporting DETECTIVE DANIEL DONATH - BPD, ID # 5430**

On 04/29/05, I received a report from Forensic Scientist Robert Berk of the Illinois State Police Crime Lab in Chicago.  Following are the conclusions as outlined in Forensic Scientist Berk's report.

CONCLUSIONS:

Exhibit 1 indicates that Damoni K. Clemon may not have discharged a firearm with either hand.  If he did discharge a firearm, then the particles were removed by activity, were not deposited, or were not detected by the procedure.

Exhibit 2 indicates that Shauntez J. Winters may not have discharged a firearm with either hand.  If he did discharge a firearm, then the particles were removed by activity, were not deposited, or were not detected by the procedure.

Exhibit 3A indicates that the area of the vehicle sample with the "Right back" sample stub contacted a PGSR related item or was in the environment of a discharged firearm.

If determined to be probative, Exhibit 3B may be analyzed.

(5) Portion

COPY

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Forensic Science Center at Chicago
1941 West Roosevelt Road
Chicago, Illinois 60608-1229
(312) 433-8000 (Voice) * 1-(800) 255-3323 (TDD)

RECEIVED

Rod R. Blagojevich
*Governor*

April 24, 2005

Larry G. Trent
*Director*

MAY 0 2 2005

STATES ATTORNEY'S OFFICE
McLEAN COUNTY

DET. T.L. WALTERS #4818
BLOOMINGTON POLICE DEPARTMENT
305 SOUTH EAST STREET
BLOOMINGTON IL 61701

Laboratory Case #M04-003564
Agency Case #200408171

OFFENSE:   Unlawful Use of a Weapon
SUSPECT:   Damoni Clemon
VICTIM:    Shauntez Winters

The following evidence was received by the Forensic Science Center at Chicago on August 30, 2004:

| EXHIBIT | DESCRIPTION | FINDINGS |
|---|---|---|
| 1 | One (1) ISP SEM/GSR kit recovered from Damoni K. Clemon. | All samples in Exhibit 1 were examined by scanning electron microscopy. |
| 1A | One (1) SEM/GSR sample from the back of the right hand. | The test results for Exhibit 1A are listed with the test results for Exhibit 1B. |
| 1B | One (1) SEM/GSR sample from the back of the left hand. | Exhibits 1A and 1B contain particles characteristic of background samples. |
| 1C | One (1) kit control sample. | |
| 2 | One (1) ISP SEM/GSR kit recovered from Shauntez J. Winters. | All samples in Exhibit 2 were examined by scanning electron microscopy. |
| 2A | One (1) SEM/GSR sample from the back of the right hand. | The test results for Exhibit 2A are listed with the test results for Exhibit 2B. |
| 2B | One (1) SEM/GSR sample from the back of the left hand. | Exhibits 2A and 2B contain particles characteristic of background samples. |
| 2C | One (1) kit control sample. | |
| 3 | One (1) ISP SEM/GSR sample from the Chevrolet Caprice. | Exhibits 3A and 3C were examined by scanning electron microscopy. |
| 3A | One (1) SEM/GSR sample identified as "Right back". | Exhibit 3A contains unique and consistent PGSR particles. |

*Exhibit "I"*

BLOOMINGTON POLICE DEPARTMENT
Laboratory Case #M04-003564                    -2-                    April 24, 2005

| EXHIBIT | DESCRIPTION | FINDINGS |
|---------|-------------|----------|
| 3B | One (1) SEM/GSR sample identified as "Left back". | No analysis. |
| 3C | One (1) kit control sample. | |

## CONCLUSIONS:

Exhibit 1 indicates that Damoni K. Clemon may not have discharged a firearm with either hand. If he did discharge a firearm, then the particles were removed by activity, were not deposited, or were not detected by the procedure.

Exhibit 2 indicates that Shauntez J. Winters may not have discharged a firearm with either hand. If he did discharge a firearm, then the particles were removed by activity, were not deposited, or were not detected by the procedure.

Exhibit 3A indicates that the area of the vehicle sample with the "Right back" sample stub contacted a PGSR related item or was in the environment of a discharged firearm.

If determined to be probative, Exhibit 3B may be analyzed.

## EVIDENCE DISPOSITION:

Exhibits 1, 2, and 3 will be returned to the submitting agency.

If you have any questions regarding this report, please call me.

Respectfully submitted,

Robert Berk
Forensic Scientist

cc:  Morton Forensic Science Laboratory